HARRISON, Plaintiff in error, v. STATE, Defendant in error.

No. 75–763–CR. Submitted on briefs March 30, 1977.—
Decided June 1, 1977.
(Also reported in 254 N.W.2d 220.)

192

For the plaintiff in error the cause was submitted on the briefs of *Howard Eisenberg,* state public defender, and *Jack E. Schairer,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Nadim Sahar,* assistant attorney general.

HEFFERNAN, J.    James Harrison, Jr., was convicted after a trial by jury of endangering the safety of another by conduct regardless of life in contravention of sec. 941.30, Stats., and attempted first degree murder in contravention of sec. 939.32 and sec. 940.01. A judgment of conviction and sentence was entered on May 1 and an amended judgment was entered on May 5, 1975, adjudging the defendant guilty of each count. He was found guilty of endangering the safety of Stanley Lybeck by conduct regardless of life, and was also found guilty of the attempt to commit the murder of Leonard Engnath. He was sentenced to three years on the first count and fifteen years on the second, with the sentences

to be served concurrently. Appeal is taken from the judgment of conviction and sentence and from the order which denied any postconviction relief.

Harrison alleges on this appeal that he was denied his Sixth Amendment right to effective assistance of counsel, because his attorney at trial represented a co-participant in the crime, one Henry Allen.

In addition, he alleges that the party to the crime statute, sec. 939.05, Stats., which was included in the instructions to the jury, was unconstitutional as applied to this case.

Harrison also argues that, because Allen received a five year sentence, which was suspended and probation allowed, and he received sentences of three and fifteen years to be served concurrently, the court abused its sentencing discretion and that he was denied equal protection as a consequence of the disparity of the sentences imposed.

The record shows that the charges against Harrison were brought as the result of an altercation that took place at the Sportsman's Bar in Adams county on July 19, 1974. In that altercation, Lybek was shot in the foot with a shotgun and was also shot in the legs with a .45 caliber pistol. Engnath was shot in the back with a .45 caliber pistol.

Earlier in the day, Dennis Kaye and Donald Laskaskie were driving on County Trunk M, after having visited a number of taverns in the vicinity. They were following closely behind a vehicle occupied by three black men, who were subsequently identified as Harrison, Allen, and Lovett. Apparently the three occupants of the leading vehicle stopped for the purpose of chastising Kaye and Laskaskie for following too closely. Words were exchanged, and there was evidence to show that Lovett struck Kaye in the face.

Later in the day, Kaye and Laskaskie were joined by Engnath, the victim of the subsequent shooting. They

determined the residence of the three black men and went to the Allen home, where they had a hostile conversation with a woman who was at the residence. Laskaskie, Kaye, and Engnath then went to the Sportsman's Bar.

Some time later, Allen and Harrison, upon seeing the Kaye vehicle parked at the tavern, stopped and, with Mary Allen, a sister of Henry, went into the tavern. Allen asked, referring to the patrons in the tavern, "[W]hich one was bad-mouthing your moma." The girl pointed to Engnath. Allen dragged Engnath outside, and a fight ensued. Engnath was knocked to the ground, and there was evidence to show that Allen then went to his car, pulled out a shotgun, and shot Lybek in the leg and also shot Engnath. Lybek was not directly involved in the altercation, although there was evidence that he threw a beer bottle at Harrison. There was evidence to show that Harrison then went to the car, got the pistol, shot at Lybek, missed him, shot a second time at Lybek and hit him in the leg, and then walked to Engnath, who had been knocked to the ground, and shot him in the back. Engnath sustained a severe injury as the result of the large caliber bullet wound in the back and stomach and would have died without surgery. Lybek had gunshot wounds in both legs and a large caliber wound in one leg.

It was as a consequence of this testimony that the verdict of guilty in respect to both counts was returned by the jury on the charges against Harrison.

Harrison was tried alone, because the other principal actor in the altercation, Allen, had pleaded guilty approximately three months before. Allen was represented throughout the proceedings by the same lawyer, Attorney James J. Poole, who represented Harrison at trial. It is on the basis of this dual representation that Harrison now claims he was denied the right to effective counsel.

A review of the procedural facts of the case shows that initially, prior to arraignment, Allen was represented by Attorney James J. Poole, and Harrison was represented by a Milwaukee attorney, Andrew Reneau, and such separate representation was afforded at the preliminary hearing held on August 6, 1974. Harrison's arraignment was scheduled to be held on October 3, 1974. For reasons not made clear in the record, Attorney Reneau failed to appear. Attorney Poole, who was in the courtroom on other business, was asked by the judge whether he would be willing to represent Harrison at the arraignment. Poole acquiesced, and the trial judge then asked Harrison whether he had any objection "to Mr. Poole sitting in with you this morning in this arraignment proceedings," to which Harrison responded, "No, sir." The trial judge stated that he would make a further appointment of counsel, but the record fails to show that any counsel was ever appointed, and Attorney Poole continued to represent Harrison thereafter.

Subsequent to the arraignment, Poole continued the representation of Allen, and Poole's negotiation with the district attorney on Allen's behalf resulted in a guilty plea. Pursuant to that plea of guilty, Allen was sentenced to a period of probation on two counts of endangering safety by conduct regardless of life. The guilty plea was entered on December 2, 1974. Poole, in the interim, prior to the trial of Harrison, filed numerous pretrial motions on Harrison's behalf. He successfully moved to suppress certain weapons which were seized subsequent to the shooting at the home where Harrison lived. He also successfully moved for a change of venue from Adams county to Juneau county.

Harrison's trial commenced at the changed venue at Mauston, Wisconsin, on February 13, 1975. At the trial, Harrison appeared by his attorney, James J. Poole.

As far as the record reveals, no objection to any dual representation or possible conflict of interest was raised

by Poole until the commencement of the second day of trial. At that time, in chambers, Poole advised the court that he felt that he had a conflict of interest in representing Harrison in light of the fact that he had represented Allen in respect to charges that arose out of the same events. He explained that his conflict of interest arose out of the possible obligation that he might have to Allen. He stated that it was his wish in the representation of Harrison to put Allen on the stand, but that, if he had any continuing obligation to Allen, he could not put Allen on the stand and permit Allen to incriminate himself in the effort to exonerate Harrison. He stated, however, that if he were assured by the district attorney that Allen was no longer in jeopardy on the charges, he could proceed.

The question was discussed with the district attorney and with the judge. Poole recited that he would be willing to proceed, upon the assurance that jeopardy had already attached to Allen by virtue of his prior plea and conviction and if he were assured that Allen could not be put in further jeopardy by any testimony he might offer on behalf of Harrison. The district attorney pointed out that Allen could not be placed in further jeopardy, because he had already been charged and convicted on the evidence involving both Engnath and Lybek. Poole concluded, "If there is no jeopardy [in respect to Allen], Your Honor, I would feel no problem." The district attorney, with the approval of the court, stipulated that jeopardy had already attached to Allen, and Poole then stated that he saw no problem.

During the course of the trial, Allen took the stand on behalf of Harrison. Allen testified in complete exculpation of Harrison and stated that he, Allen, had placed the guns in the vehicle unbeknownst to Harrison and that he, and not Harrison, had fired the shotgun and the .45 caliber pistol. He stated that Harrison took the shotgun from him after he had fired both barrels

and that the shotgun was not loaded when it was in Harrison's possession. At no time, he testified, was the .45 caliber pistol in Harrison's possession. He stated that Harrison did not assist during the altercation.

If Allen's testimony had been believed by the jury, Harrison would have been exonerated of the actual shooting.

On postconviction motions, the Public Defender challenged the alleged dual representation by Attorney Poole and alleged that Harrison was denied the effective assistance of counsel. Attorney Poole testified at that hearing and stated that he had been temporarily appointed counsel for Harrison at the arraignment but that there had been no formal acceptance by Harrison of his representation and he had never been formally appointed counsel for the remainder of the case. Poole testified, from his knowledge of the Allen case and the Harrison case, that Allen was the prime participant in the crime and that it was in the best interests of Allen to plea bargain. He stated that, had he represented only Harrison, he would have had a polygraph taken and would have recommended that the less culpable Harrison turn state's evidence at Allen's trial in exchange for a promise of immunity.

The trial judge denied the motion based on the alleged ineffectiveness of counsel, because he found that no actual conflict of interest existed between Attorney Poole's earlier representation of Allen and the representation of Harrison at trial. He emphasized that, during the course of trial, Attorney Poole broached the question of whether he had a conflict of interest, not because he had any misgivings in respect to his ability to fully and adequately represent Harrison, but, rather, because he was concerned with the question of whether his representation of Harrison would place Allen in further jeopardy. When Allen's jeopardy was resolved and At-

torney Poole concluded that he would not put his former client into jeopardy by having him testify on behalf of Harrison, all his doubts were resolved. After Poole's responsibilities in respect to Allen were clarified, he stated no reasons why he could not continue to represent Harrison. He never asked the court to allow him to withdraw after he satisfied himself in respect to Allen, his former client.

The trial judge found in his decision on motions following the postconviction hearing that jeopardy had attached as to Allen and, therefore, Allen could not be charged further and no conflict existed between the interests of Allen and Harrison at the time the trial commenced.

Irrespective of the question of responsibility to Allen, it is apparent from the record that Attorney Poole fully discharged his responsibility to Harrison, the defendant in the case before this court. The trial judge made a specific finding in respect to Poole's conduct at the trial. He stated:

"It was meticulously and capably tried by defense counsel. Defense counsel's direct and cross examination of witnesses was far-reaching, detailed and incisive. His preparation and presentation of his case was exhaustive. His arguments and demeanor before the jury was excellent. This case was as thoroughly presented to the jury as any the Court has seen. It was an excellently well tried law suit. The defense attorney did not present the case in any way inconsistent with the defendant's best interests beyond a reasonable doubt."

In respect to Allen's testimony, the trial judge pointed out that Allen, without compulsion, took the stand during the Harrison trial and testified that he, Allen, did all the shooting and the defendant Harrison did none of it. Allen took all the blame and completely exonerated Harrison in that respect. There was no conflict in

Attorney Poole's position in the defense of Harrison and the testimony which he offered by putting Allen on the stand. There was no inconsistency between what Allen testified to and what Harrison testified to. The fact that neither Harrison nor Allen were believed by the jury is a matter of credibility, not to be resolved by this court, and is completely irrelevant to the allegations of dual representation.

We conclude that the findings of the trial judge following the postconviction hearing were supported by the facts and his conclusions are correct under existing law.

■

It is, of course, true that a client in a criminal case has the Sixth Amendment right to the undiluted loyalty of his attorney. The American Bar Association *Standards Relating to the Defense Function,* sec. 3.5, places a duty on counsel to disclose any conflicts that he might have in representing a client. Sec. 3.5 (b) provides in part:

"The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."

Harrison and Allen were not co-defendants in the sense that their cases were joined in a single trial. This court has recognized, however, that a conflict may arise, even where there has been a severance, when a single counsel is concerned with strategy planning and plea bargaining alternatives in respect to clients who are charged as the result of an event in which both participated. This court stated in *State ex rel. White v. Gray,* 57 Wis.2d 17, 31-2, 203 N.W.2d 638 (1973):

"While this court has noted that a conflict of interests is less likely to occur in guilty plea situations than in full blown trials, we are convinced that the instant situation, if such a plea bargain as alleged [that one defendant take the rap for another] was actually agreed upon, represents an example of what this court referred to in *Mueller* as 'some other persuasive reason why . . . did not effectively represent both defendants.' The alleged plea bargain did burden Raymond White with pressures of an extraordinary nature and did represent a situation in which a conflict of interest as between the two defendants that trial counsel represented existed."

Sec. 6.2 (c) of the American Bar Association *Standards Relating to the Defense Function*, provides:

"It is unprofessional conduct for a lawyer to seek to accept concessions favorable to one client by any agreement which is detrimental to the legitimate interests of any other client."

The United States Supreme Court in *Glasser v. United States*, 315 U.S. 60 (1942), held that, where a counsel was forced by a court, over his objection, to represent co-defendants in a joint trial and he was thereby forced to make strategic choices favorable to one client and unfavorable to the other, a defendant's Sixth Amendment rights were abridged.

This court has recognized that principle, but, as is implicit in *Glasser*, this court has explicitly required that there be a showing of actual conflict, not the mere possibility or suspicion that a conflict could arise under hypothetical circumstances.

In *Mueller v. State*, 32 Wis.2d 70, 145 N.W.2d 84, cert. den. 389 U.S. 862 (1966), the defendant relied on *Glasser* and argued that he pleaded guilty only at the instigation of counsel, who, unbeknownst to him, represented his co-defendant. This court distinguished *Glasser*

and pointed out that in *Glasser* there was a joint trial, that there were glaring inconsistencies in the interests of the two defendants, and that counsel's trial tactics were skewed to the detriment of one of them. This court refused to interpret *Glasser* as holding that a defendant had the right *per se* to an attorney dedicated solely to his interests. The Wisconsin court said:

"Petitioner argues that this holding requires an attorney dedicated solely to his interests, regardless of whether any conflict of interest exists. This interpretation of *Glasser* is too broad. Petitioner must make a showing that the dual representation impaired the effectiveness of his counsel." (at 76)

Even in the event of joint trials, we have held that a defendant's Sixth Amendment rights are not abridged if the defendants who are represented by single counsel do not have inconsistent positions and an actual conflict of interest is not shown. *Holloway v. State,* 32 Wis.2d 559, 146 N.W.2d 441 (1966) ; *Kaczmarek v. State,* 38 Wis.2d 71, 155 N.W.2d 813 (1968).

In *State v. Reppin,* 35 Wis.2d 377, 388, 151 N.W.2d 9 (1967), we stated that the burden was on the defendant to show by clear and convincing evidence that an actual and operative conflict of interest existed by virtue of dual representation. The mere potentiality for, or a hypothetical possibility of, conflict or prejudice was not sufficient. See also *Hebel v. State,* 60 Wis.2d 325, 210 N.W.2d 695 (1973).

In *Curry v. State,* 36 Wis.2d 225, 152 N.W.2d 906 (1967), relying upon *Holloway v. State, supra,* and *Massey v. State,* 28 Wis.2d 376, 137 N.W.2d 69 (1965), we again stated that the mere fact that an attorney represents two defendants charged in the same crime is not *ipso facto* evidence of inadequate representation. On habeas corpus before the Court of Appeals for the Seventh Circuit, that court agreed in *Curry v. Burke,*

404 F.2d 65 (7th Cir. 1968), with this court's analysis in *Curry*.

In the instant case, it is Harrison's right to counsel with which we are concerned, not Allen's, and it seems clear that Poole's prior representation of Allen enabled him to produce Allen, an eyewitness, whose testimony, if believed, would have resulted in the jury's exoneration of Harrison. This hardly is evidence of any conflict in representational interests to the detriment of Harrison. However, it is important to remember that the jury did not believe Allen, and the evidence which they could have believed was that Harrison personally shot both Lybek and Engnath with the .45 caliber pistol.

Poole's posttrial hypothesis—in which he speculated that, had he represented Harrison alone, he would have secured his immunity in exchange for testimony against Allen—seems far-fetched. In view of the proof at trial, all of which was substantially before the district attorney prior to Harrison's trial, it would appear that the district attorney had excellent cases against both Harrison and Allen. It is purely speculative for Poole or Harrison to contend now that Harrison was ever in a position to secure immunity or to convince the district attorney or the judge that Harrison was substantially innocent and should be granted immunity in exchange for testifying against Allen.

In addition, it should be reemphasized that Poole was confronted with no problem of dual representation at the time he represented Harrison at trial. Poole never contended, when he raised the question of conflict, that his representation would be detrimental to Harrison. He was concerned only with possible renewed jeopardy in respect to Allen; but, as was made clear to him when he posed the possibility of conflict, Allen could not be further charged. His responsibilities in respect

to Allen had ceased. Rather than finding the former dual representation disadvantageous to Harrison, it was advantageous, for the Allen prosecution was completed, jeopardy had attached, and Poole, at Harrison's trial, could put Allen on the stand to testify for Harrison with complete impunity.

At the very least, it is clear that the defendant has not met the burden of proving by clear and convincing evidence that, in the posture of the case here, there was either dual representation or a conflict of interest between Allen and Harrison.

It is also contended on this appeal that the court erred in not *sua sponte* inquiring into Harrison's understanding of problems that might be inherent in dual representation. In view of the facts which are clearly demonstrated from the record, this argument is irrelevant.

The fact is that Attorney Poole did not represent both Allen and Harrison at the time of the trial, and there was no dual representation in respect to which the trial judge had an affirmative duty. The only time at which Poole appeared and acted for both Harrison and Allen was at the arraignment, and this has not been objected to. Moreover, it should be pointed out that the record shows that, when Poole stated, prior to the commencement of the second day of trial, that he perceived that his representation of Harrison might result in additional jeopardy to Allen, Harrison was present.

The judge then inquired extensively of Poole in respect to any problems that were posed by the fact that he had previously represented Allen. There was no argument made at that meeting which indicated possible prejudice to Harrison in the course of the trial. Harrison was fully aware of what was transpiring and was informed as fully as a criminal defendant could be of the exact relationship of his attorney to another person

involved in the same event. Certainly Harrison was fully apprised of all the possible ramifications that might be the result of the alleged dual representation. The discussion in chambers made it clear that no problems existed in respect to Harrison.

It is argued that nevertheless this court adopt the rule set forth in *Campbell v. United States*, 352 F.2d 359 (D.C. Cir. 1965), that where there is dual representation, the court has an affirmative duty to ascertain whether defendants are aware of the potential risks involved. That court stated the rule:

"An individual defendant is rarely sophisticated enough to evaluate the potential conflicts . . . . Considerations of efficient judicial administration as well as important rights of defendants are served when the trial judge makes the affirmative determination that co-defendants have intelligently chosen to be represented by the same attorney and that their decision was not governed by poverty and lack of information on the availability of assigned counsel. We must indulge every reasonable presumption against the waiver of the unimpaired assistance of counsel." (at 360–61)

This court has previously been asked to adopt the *Campbell* rule. We declined to do so in *Rohl v. State*, 65 Wis.2d 683, 223 N.W.2d 567 (1974). We did not reject the rule of *Campbell*, but stated that it was inapplicable to the facts before the court. It is equally inapplicable to the facts before us now. We should point out, however, that the *Campbell* rule, although on its face appealing, has been rejected by most other jurisdictions. The most vehement rejection appeared in *United States v. Paz-Sierra*, 367 F.2d 930 (2d Cir. 1966). That court stated:

"The ramifications of the situation in which the court in advance of trial arrogates to itself the function of determining whether the 'co-defendants have intelligently chosen to be represented by the same attorney' are so

great as to cause this Court to doubt the wisdom of adopting the proposition that an affirmative determination be made by the trial court that the defendant has 'intelligently chosen to be represented by the same attorney.' No facts have thus far been presented that the Bar of this country is so unmindful of the canons of ethics and its obligation to avoid positions of conflict as to call for a pre-trial cross-examination of defendants and their counsel on the theory, or even presumptuous presumption, that counsel will not be faithful to the best interests of their clients and when aware of any conflict of interest between clients jointly represented whether before or during trial will not disclose it to the court and seek appropriate relief." (at 932)

Accord, *United States v. Boudreaux*, 502 F.2d 557, 558 (5th Cir. 1974); *United States v. Christopher*, 488 F.2d 849, 851 (9th Cir. 1973); *United States v. Kutas*, 542 F.2d 527 (9th Cir. 1976); *United States v. Mandell*, 525 F.2d 671 (7th Cir. 1975).

Accordingly, the fact that we find the *Campbell* rule inappropriate to the facts in this case should not be construed as a holding that we would accept it in a case where dual representation is shown.

It is additionally argued that it was reversible error for the court to refuse to permit Poole to withdraw from the representation of Harrison. While, in a proper case, the defendant's reliance on *J. W. Hill & Son, Inc. v. Wilson*, 399 S.W.2d 152 (Tex. 1966), might be appropriate, the principle is not applicable here. Poole, once he was satisfied that there was no continuing jeopardy problem in respect to Allen, agreed to represent Harrison and never asked to withdraw. Moreover, in the instant case the abandonment of a client charged with first degree murder on the second day of trial would result in clear and immeasurable prejudice. Under the circumstances, we think it would have been highly improper for the trial court to have permitted the withdrawal of counsel at this juncture of the proceedings.

It is also contended that Harrison did not consent to Poole's representation. The record does not show a formal appointment of Poole as counsel for Harrison. There was, however, a specific consent at the time of the arraignment, although none appears of record thereafter. Nevertheless, following the arraignment, Harrison fully acquiesced in Poole's representation and cooperated with Poole in preparing his defense. At the postconviction hearing, when Harrison was asked whether he consented to Poole's representation, he stated that he could not remember. His conduct demonstrates that he indeed consented to such representation, and there is absolutely nothing in the record to show that he refused to have Poole as his counsel. This argument is meritless.

The information charged Harrison in Count 1 with endangering the safety of Stanley Lybek contrary to the provisions of sec. 941.30, Stats., and in Count 2 with the attempt to commit the murder of Leonard Engnath contrary to the provisions of secs. 940.01 and 939.32. The jury returned a verdict of guilty to each of these counts, and by that verdict Harrison was found guilty as a principal on each count.

A party to the crime instruction under sec. 939.05, Stats., was submitted to the jury. This instruction was objected to at trial on factual grounds. The objection has not been renewed. In postconviction motions, however, the Public Defender argued that the party to the crime statute posed alternate theories for the jury's deliberation. Under such instruction the jury could find that Harrison was concerned in the commission of the crime as a principal, if he directly committed the crime, intentionally aided and abetted the commission of the crime, or was a party to a conspiracy for the purpose of committing a crime. It appears to be the

argument of the Public Defender that these alternate theories of responsibility fail to give notice to the defendant of the jury's rationale in arriving at the verdict of guilty. The emphasis of the Public Defender seems to be upon the fact that, because the verdict, in conformity with the information and with sec. 939.05, found him guilty as a principal, he is unable to attack his conviction, because he cannot ascertain which of the three alternatives were selected by the jury. Although the Public Defender does not appear to argue that, by reason of the instruction, the defendant was not apprised of the charges against him, it would appear that such argument is implicit in the Public Defender's proposition.

The state takes the position that, because the constitutional objection was not raised at trial, it was waived and should not be considered on appeal.

We conclude, however, that the objection was timely raised as a constitutional objection under sec. 974.06, Stats.—not as a mere objection to the sufficiency of the evidence or the sufficiency of instructions during the course of the trial. It is, therefore, cognizable by this court. Past decisions of this court conclude that a party to a crime instruction is appropriate under proper facts brought out at trial even though the defendant is charged only as a principal and the verdict is returned only in respect to the commission of the crime as a principal. *LaVigne v. State,* 32 Wis.2d 190, 145 N.W.2d 175 (1966), and *State v. Cydzik,* 60 Wis.2d 683, 211 N.W.2d 421 (1973). This procedure is precisely the one approved by sec. 939.05, Stats., party to a crime.[1]

---

[1] "939.05 Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some

■

On a factual basis the party to the crime instruction in respect to both counts is particularly appropriate in view of the evidence adduced at trial. Although Harrison was charged as a principal—and there was ample evidence to convict him as the principal in respect to each crime—the defense evidence tendered by the testimony of Allen, if believed, could have exonerated him as a principal and yet left him with responsibility as a party to the crime. The party to the crime instruction was appropriate under the facts, and the jury, in its ultimate fact verdict of guilt, could properly have found him guilty as a principal under any or all of the alternatives. In view of the direct evidence that Harrison fired the .45 caliber pistol and inflicted wounds on both Lybek and Engnath, the jury, disbelieving the contrary testimony of Allen, in all probability found Harrison guilty as the person who directly committed the crime.

■

Instructions are intended to reflect theories of law pertinent to the evidence, which a jury is required to

---

other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

follow in reaching a verdict. What theory of law is appropriate to a particular case depends upon the factual situation. Where it is apparent from the inception of the case that one theory will be pursued to the exclusion of the others, it is desirable, and in some cases mandatory, specifically to charge the defendant either as a principal, aider or abettor, or conspirator; but in many cases, such as the one now before the court, the full evidence in respect to vicarious liability cannot be known until trial. See *Bethards v. State,* 45 Wis.2d 606, 173 N.W.2d 634 (1970) ; *Nicholas v. State,* 49 Wis.2d 683, 183 N.W.2d 11 (1971).

In *State v. Shears,* 68 Wis.2d 217, 229 N.W.2d 103 (1975), we pointed out that the purpose behind the enactment of sec. 939.05, Stats., was to abolish the common law distinctions between principals and accessories to a crime. We specifically held, relying on *Cydzik, supra,* that the instructions to the jury, which not only instructed on the principal crime but on aiding and abetting and conspiracy, did not unconstitutionally deny a defendant of notice.

The instructions under sec. 939.05, Stats., were not unconstitutionally applied in the instant case. It is entirely correct, in accordance with the rationale of sec. 939.05, that the verdict of the jury refer only to the substantive offense, even when a party to a crime instruction has been given and when the jury has made the finding of guilt on an alternate basis of vicarious liability.

Additionally, the Public Defender makes the interesting, but bizzare, contention that the defendant was twice put in jeopardy because, as the result of the party to the crime instruction, a conspiracy charge was added. The Public Defender points out that the accepted law recog-

nizes that individual acts pursuant to a conspiracy are subsumed in it and may not be charged separately. That, of course, represents a general rule, but the Public Defender's reliance on *Braverman v. United States,* 317 U.S. 49 (1942)—to the effect that, where a conspiracy is charged, there can only be one crime, conspiracy, no matter how diverse may be its objectives—is misplaced in the factual context of this case. The defendant was not charged with conspiracy. Conspiracy is a separate crime, both in the federal law and the law of the State of Wisconsin.

Sec. 939.31, Stats., defines the crime of conspiracy. The defendant was not charged under that section. Had he been, and were he convicted of conspiracy and as a party to a completed crime, which was the object of the conspiracy, such finding would be contrary to sec. 939.72. That statute prohibits a conviction of both the inchoate and completed crime. The conspiracy statute, however, was not implicated in the present charges. The double jeopardy problem with which the Public Defender seems concerned simply does not exist under the facts of this case. Harrison was charged and convicted as a principal in respect to two separate crimes. The rule which the Public Defender seeks to invoke has no application to the facts here.

It should be emphasized that the entire tenor of proof in the record demonstrates that there was sufficient evidence beyond a reasonable doubt to convict Harrison of each of the individual crimes charged without any consideration whatsoever of the parties to the crime instruction. We are satisfied that the vicarious liability instructions given did not unconstitutionally deprive the defendant of notice of the crime charged, nor did they place him twice in jeopardy on the theory that he could not be convicted of a conspiracy and an

underlying crime. He was charged with the crimes and not with conspiracy.

As a final argument, the Public Defender contends that there was such a disparity in the sentences imposed on Harrison and Allen arising out of the same event that Harrison was denied equal protection. Allen was given a five-year sentence and placed on probation. Harrison was sentenced to two indeterminate terms of three and fifteen years to run concurrently. We think that a mere examination of the respective charges dispels any constitutional invalidity in respect to the sentences. Allen was placed on probation after a plea of guilty on charges of endangering the safety of Lybek and Engnath by conduct regardless of life. Harrison was found guilty of not only endangering the safety of Lybek, for which he was sentenced to three years, but in addition was found guilty of the attempted first degree murder of Engnath. It is apparent that the charges of which Harrison was convicted warranted a substantially more severe sentence. In view of the fact that there was clearly credible evidence produced at trial upon which a reasonable jury could find Harrison guilty beyond a reasonable doubt of attempted first degree murder, any disparity *per se* in respect to the sentences imposed on Harrison as compared to Allen is completely appropriate and poses no constitutional question.

It is also argued that the trial judge failed to adhere to the *McCleary* standards in imposing sentence. *McCleary v. State*, 49 Wis.2d 263, 182 N.W.2d 512 (1971). Particularly it is argued that, in view of the probation officer's recommendation, probation should have been ordered as a proper disposition of Harrison's case. In light of the facts revealed at trial and in view of the articulated reasons of the sentencing judge, we

find no abuse of discretion. The trial judge pointed out that Harrison shot two "completely and utterly defenseless" men at point blank range with an extremely lethal weapon. He characterized Harrison's conduct as "completely a cold blooded attack." The trial judge specifically found the shooting of the defenseless men an extremely serious offense and that to give probation under such facts would depreciate the seriousness of the offense. In the review of the sentence imposed, the judge thus specifically relied upon the American Bar Association *Standards Relating to Probation*, sec. 1.3 (a) (iii).

At the time of sentence, the judge also stated that he felt that Harrison perjured himself and that the witnesses on his behalf had committed perjury. While it would have been improper for the trial judge to impose an additional period of commitment because of his belief that defendant committed perjury—for if perjury was committed it should be charged as a separate crime— he made it clear that the sentence was imposed because of the aggravated nature of the crime and that his feelings about the perjured testimony did not impel him to sentence Harrison as he did.

We conclude that the sentence imposed was not as a result of an abuse of discretion. The sentence was based upon proper factors and a careful consideration of the facts was set forth in the judge's stated rationale, and as the judge stated, probation under the circumstances would unduly depreciate the seriousness of the offense.

*By the Court.*—Judgment and order affirmed.