HOLLAND, Plaintiff in error, v. STATE,
Defendant in error.†

Supreme Court

*No. 77–485–CR. Argued May 2, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 288.)

† Motion for reconsideration denied, without costs, on August 27, 1979.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant in error the cause was argued by *Ruth S. Downs,* assistant state public defender, with whom on the briefs was *Richard L. Cates,* state public defender.

WILLIAM G. CALLOW, J.   The state seeks review of this decision of the court of appeals vacating the judgment of conviction and remanding the case for a new trial.[1]   The court of appeals held that the trial court committed prejudicial error in failing to instruct the jury that, before it could find the defendant Holland guilty of the crime charged, it had to agree unanimously on which category of the party to a crime statute[2] —direct commission, aiding and abetting, or conspiracy— was violated. The court of appeals concluded the activity giving rise to criminal liability is different for each of the categories described in the instruction. We reverse.

Holland and Hoppe entered an apartment shared by Mary Jans and Lynn Westbrook, locked the doors, and

[1] 87 Wis.2d 567, 275 N.W.2d 162 (1979).

[2] Sec. 939.05, Stats., provides:

"**939.05 Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it.  Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime.  This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

forced their attentions on the women. Holland forced Jans to perform sex acts and was convicted of sexual perversion. He did not appeal that conviction. Holland was also charged with first-degree murder, party to a crime. This charge resulted from the death of Westbrook as a consequence of injuries suffered during this incident.

At the murder trial Jans testified that, while she was in the living room with Holland, she heard Westbrook scream twice from the bedroom where Westbrook was with Hoppe. Hoppe left the bedroom, and Holland left the living room and entered the bedroom. Holland testified he found Westbrook having breathing difficulties and tried to clear her throat. Hoppe told Jans she had seen too much and began choking her. Hoppe's choking was interrupted by a knock on the door. Holland told Jans that Westbrook was dead and that they would have to take her with them. She escaped out the back door as the men were planning to leave. Hoppe testified Westbrook was alive when he left the bedroom and Holland entered. He testified he saw Holland kicking and jumping on something. Westbrook died a week later of irreversible brain damage due to lack of oxygen.

Hoppe's trial resulted in his conviction for second-degree murder. *See: Hoppe v. State,* 74 Wis.2d 107, 246 N.W.2d 122 (1976). Holland was charged with first-degree murder, party to a crime,[3] and was convicted of second-degree murder, party to a crime.[4]

The court instructed the jury, in accordance with Wis. J I—Criminal, Part I, 400, a party is concerned in the commission of a crime if he either directly commits the crime, aids and abets its commission, or conspires with another to commit the crime or another crime, the natural and probable consequence of which is the charged offense. The court gave the standard unanimity instruction but did not instruct the jury that it must be unanimous as

---

[3] Secs. 940.01 and 939.05, Stats.
[4] Secs. 940.02 and 939.05, Stats.

to the manner in which the defendant was a party to the crime.

The issue on review is whether the standard party to a crime instruction, phrased disjunctively, violates the defendant's right to a unanimous verdict guaranteed by the Wisconsin Constitution.

Sections 5 and 7 of Article I, of the Wisconsin Constitution, guarantee the right to trial by jury. The decisions of this court have long assumed that this includes the right to a unanimous verdict. *See, e.g., Vogel v. State,* 138 Wis. 315, 332–33, 119 N.W. 190 (1909); *Boldt v. State,* 72 Wis. 7, 14–16, 38 N.W. 177 (1888).

Linked to the unanimity requirement is the due process requirement that the prosecution prove each essential element of the offense beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358 (1970); *Turner v. State,* 76 Wis. 2d 1, 10, 250 N.W.2d 706 (1977). This requirement finds its justification principally as a means of reducing the risk of a guilty verdict resting on factual error. *Winship, supra* at 363. Recognizing the unanimity requirement and the reasonable-doubt standard, it is clear that the jury must agree unanimously that the prosecution has proved each essential element of the offense beyond a reasonable doubt before a valid verdict of guilty can be returned.

The question presented is whether this unanimity principle is violated where the trial court instructs the jury, in the disjunctive, as to the various ways a person might be guilty as a party to a crime without requiring the jurors to agree on the applicable theory or theories.

The leading federal case on the requirement of unanimity is *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977). In *Gipson* the defendant was convicted of violating 18 U.S.C. sec. 2313, imposing criminal liability on one who "receives, conceals, stores, barters, sells or dis-

poses of" a stolen vehicle in interstate commerce. In response to a question from the jury, the trial court expressly instructed:

"If each of you is satisfied beyond any reasonable doubt that he did any one of those acts charged, and did it with the requisite state of mind, then there would be a unanimous verdict, and there could be a return of guilty under Count Two of the indictment, *even though there may have been disagreement within the jury as to whether it was receiving or storing or what.*" (Emphasis added.) *Id.* at 456.

The court divided the six acts prohibited by the statute into two "conceptual groups": The first—receiving, concealing, and storing; the second—bartering, selling, and disposing:

"Within each grouping, the acts are sufficiently analogous to permit a jury finding of the actus reus element of the offense to be deemed 'unanimous' despite differences among the jurors as to which of the intragroup acts the defendant committed." *Id.* at 458.

The court concluded that acts within each group were not "conceptually distinct" and that it would create semantic problems of characterization and definition to require the jury to choose among the labels in each grouping. The *Gipson* logic requires the jury to agree on the factual theory or "concept" underlying criminal liability but does not require it to split hairs over nomenclature.

*State v. Carothers,* 84 Wash.2d 256, 525 P.2d 731 (En-Banc 1974), appears to be the only case directly on point. The defendant was convicted of two counts of murder and one robbery. The trial court gave an instruction based on RCW 9.01.030,[5] a party to a crime statute simi-

---

[5] Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or in-

lar to sec. 939.05, Stats. The defendant argued that it was error not to instruct the jury that it must be unanimous as to the manner of the defendant's participation in the crime. In affirming the conviction, the court reasoned that the gravamen of the offense under the statute is participation; the elements of the crime are the same regardless of the manner of participation. *Id.* at 734–37. The court concluded unanimity demands only that the jurors agree the defendant somehow participated in the crime. *See also: People v. Burgess,* 67 Mich. App. 214, 240 N.W.2d 485 (1976).

Unanimity demands that the jury be agreed that the defendant committed a specific act the law prohibited. The issue is how specifically the prohibited act must be defined. The state argues that the act for which party to a crime liability is imposed is participation in whatever form; the defendants argue liability is not proven until there is jury unanimity concerning the manner of participation.

To reach a definitive conclusion, we must examine the nature of the liability created under the party to a crime statute. At common law one who was present at a crime and aided its commission was liable as a principal, along with the one directly committing the crime. One who aided the commission of a crime without actually being present was liable as an accessory before the fact. LaFave and Scott, *Criminal Law,* sec. 63, 495–98 (Hornbook Series, 1972). The distinctions gave rise to several procedural problems which were the target of legislative reform. LaFave, *supra* at 498–501. For example, a person charged as a principal could not be convicted as an

directly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such.

accomplice and vice versa; and an accessory could not be convicted unless the principal had been convicted. Wisconsin Legislative Council 1953 Report, Vol. 5, Judiciary Committee Report on the Criminal Code, at 6, notes that: "The obvious injustice of such an arbitrary distinction caused most states including Wisconsin to abolish it." *See also: State v. Shears,* 68 Wis.2d 217, 239, 229 N.W.2d 103 (1975).

The legislative judgment embodied in sec. 939.05, Stats., determining that those concerned in the commission of a crime are equally liable along with the one who directly committed it, does not mean that the factual basis for liability as a direct actor, an aider or abettor, or a conspirator is identical. The direct actor is the one whose conduct directly satisfies each element of the substantive offense. The differences between an aider and abettor and a conspirator were fully explored in *State v. Nutley,* 24 Wis.2d 527, 554–55, 129 N.W.2d 155 (1964), and more recently in *State v. Charbarneau,* 82 Wis.2d 644, 651–53, 264 N.W.2d 227 (1978):

"There are two different party-to-a-crime theories embodied in the statute. Sec. 939.05(2)(b) relates to guilt as an aider and abettor, while sec. 939.05(2)(c) relates to guilt as a conspirator.

"There are several different ways in which liability as an aider and abettor has been described. In *State v. Nutley, supra,* 24 Wis.2d at 554–55, the liability was described as follows:

" 'Under the complicity theory of sec. 939.05(2)(b), a person is liable for the substantive crime committed by another if (1) he undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further if (2) he consciously desires, or "intends" that his conduct will yield such assistance.'

"To like effect, *see, Hawpetoss v. State,* 52 Wis.2d 71, 187 N.W.2d 823 (1971). Wis. J.I.—Criminal, Part I, 400(A)."

We recognize there may be significant differences between complicity and conspiracy, but there are cases in which the distinctions blur. The Judiciary Committee Report, *supra* at 5, notes: "There will be some overlapping between [the conspiracy provision] and the aiding and abetting provision because a conspirator or solicitor frequently also aids and abets the actual commission of the crime."

This court has commended the practice of including the party to a crime statute in the information but has held that one may be convicted as a party to crime even though the information makes no mention of sec. 939.05, Stats. *Harrison v. State,* 78 Wis.2d 189, 254 N.W.2d 220 (1977); *Bethards v. State,* 45 Wis.2d 606, 617–18, 173 N.W.2d 634 (1970). Likewise, the information need not refer to a specific subsection of the statute. *State v. Cydzik,* 60 Wis.2d 683, 688, 211 N.W.2d 421 (1973). The state is not required to elect a given theory to submit to the jury. *Harrison, supra; Hardison v. State,* 61 Wis.2d 262, 270–72, 212 N.W.2d 103 (1973).

In *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989, 990 (1903), the court held:

" 'It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other.' . . . So, in this case, it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one. It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute."

Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed. The cases across the country— New York, Michigan, Washington—recognize and note that it is sufficient that all jurors unanimously agree on their ultimate conclusion that the defendant was guilty of the crime charged, though they may not agree on the manner in which the defendant participated in the crime if under any of the alternative ways the defendant would be guilty of the crime charged. To permit any other conclusion would be to permit the guilty defendant to escape accountability under the law because jurors could not unanimously choose beyond a reasonable doubt which of several alternate ways the defendant actually participated, even though all agree that he was, in fact, a participant.

Here Holland was charged with first-degree murder, and the jury was instructed on the various parties to the crime theories. We recognize that the party to a crime statute does not create three separate and distinct offenses. In *State v. Shears,* 68 Wis.2d 217, 229 N.W.2d 103 (1975), we pointed out that the purpose behind the enactment of sec. 939.05, Stats., was to abolish the common law distinctions between principals and accessories to a crime. We specifically held that the instructions to the jury, which not only instructed on the principal crime but on aiding and abetting and conspiracy, did not unconstitutionally deny a defendant notice. We approve the conclusion reached in *State v. Holloway,* 7 N.C. App. 147, 171 S.E.2d 475 (1970), when the court said "there is no such offense . . . as 'aiding and abetting in the offense of murder.' When two or more persons aid and abet each other in the commission of a crime, all being

present, all are principals, and equally guilty."

Here we have a single offense for which the defendant could be found liable in three alternative ways—direct commission, aiding and abetting, and conspiracy—when the jury unanimously concluded the defendant was guilty of second-degree murder. The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation. To require unanimity as to the manner of participation would be to frustrate the justice system, promote endless jury deliberations, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue.

The defendant responded to the petition to appeal by requesting this court, if review were granted, to consider other aspects of this case. This court granted the petition to review the unanimity question but did not specifically limit the review. We recognize the failure to limit the review as oversight and, accordingly, have examined the issues of alleged error involving change of venue, first-degree murder instruction, and alleged denial to a trial by an impartial jury. We summarily affirm the conclusion of the court of appeals that the trial court did not commit prejudicial error in these aspects of the case.

*By the Court.*—The decision of the court of appeals is reversed and the order vacated; the judgment and order of the circuit court are affirmed.