STATE of Wisconsin, Plaintiff-Respondent,

v.

Gabriel DERANGO, Defendant-Appellant-Petitioner.

Supreme Court

*No. 98–0642–CR. Oral argument April 6, 2000.—Decided July 11, 2000.*

2000 WI 89

(Also reported in 613 N.W.2d 833.)

723

For the defendant-appellant-petitioner there were briefs by *Robert G. LeBell*, Milwaukee, and oral argument by *Robert G. LeBell*.

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein*, assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. DIANE S. SYKES, J. This is a child enticement and sexual exploitation case arising out of an incident in which the defendant telephoned a 15-year-old girl and offered her $300 to perform a striptease and other sexual acts on video. The defendant, Gabriel Derango, was convicted of one count each of child enticement and attempted child sexual exploitation,

and now challenges those convictions on unanimity, multiplicity and sufficiency of the evidence grounds. He has other claims of error as well: the admission of other acts evidence against him, and the filing of an amended information conforming the charges to the proof at the close of the evidence. We affirm.

¶ 2. On February 7, 1997, 15-year-old Jessica E. and several of her friends were waiting for a ride outside a McDonald's restaurant in Kenosha when they were approached by the defendant, Gabriel Derango, a 68-year-old McDonald's employee. Derango asked Jessica what grade she was in. Jessica replied that she was in tenth grade and asked Derango why he wanted to know. Derango said he was just curious and went back inside the restaurant.

¶ 3. A short time later, Derango returned outside and asked Jessica if she had ever modeled. Jessica told him that she had, and that she was enrolled in modeling school. Derango then asked her if she was interested in modeling in magazines and catalogs. When Jessica said yes, Derango told her that he would first need her mother's permission because she was underage, and asked for her telephone number. Jessica gave Derango her home telephone number, and Derango said he would call her soon.

¶ 4. Two days later, Derango called Jessica and asked if she was still interested in modeling for him. Jessica inquired what kind of modeling was involved. Derango told her that the job was "risque." He then offered her $300 to perform a striptease and other nude sexual acts on video. Derango told Jessica that at some point, he or one of his friends would get in the video with her and perform sexual acts. Derango said he would pick Jessica up and take her somewhere to shoot the video.

728

¶ 5. In the course of the telephone call, Derango began asking Jessica personal questions, including whether she had a boyfriend, whether she and her boyfriend ever had sex, and whether she had tried oral sex. Jessica told Derango that it was none of his business, but Derango persisted, eventually telling Jessica that she should try having sex with an older man, hinting that she should try it with him. Jessica testified that Derango was "very persistent in offering me $300 in exchange for him filming me doing sex acts" and "would not take no for an answer." Derango told Jessica to think about his offer and he would call her the following day.

¶ 6. Jessica immediately told her mother about the call and the next morning went to the police to report the incident. On February 15, 1997, City of Kenosha Police Detective Russell Beckman went to Derango's home to question him. During the interview, Beckman noticed several videotapes with distinctive lettering scattered around Derango's living room. The tapes were labeled with women's names, including "Theresa," "Cindy," "Abbey," and "Vicky," and the words, "Parkside," "Milwaukee College," "Visitor Exchange Czech Republic," and "Racine." These titles corresponded to a handwritten list also found in Derango's home. Beckman asked Derango if he could take the tapes, and Derango consented.

¶ 7. The tapes were amateur productions depicting girls who appeared to be in their middle to late teens performing stripteases and other sexual acts. One video featured a girl in a bedroom that appeared to be that of a teenager or preteenager. On the tape, the girl is seen removing her clothes and performing sexually explicit acts, stating that she is 18, but that the viewer could pretend that she is 14, 15 or 16, and

729

encouraging the viewer to remember what it was like to have a girl of her age.

¶ 8. On February 18, 1997, Beckman returned to Derango's home to take a statement. Derango told Beckman that, contrary to Jessica's version of events, Jessica had actually approached *him* while he was working and told him that she was taking modeling classes and wanted to be a model. Derango said Jessica then gave him her telephone number. Derango told Beckman that when he called Jessica they talked about trouble she was having in school and with her boyfriend. He said Jessica told him that she was pregnant and needed money, and then offered to have sex with him for $50.

¶ 9. Derango was charged with one count of child sexual exploitation (using, persuading, inducing, or enticing a child to engage in sexually explicit conduct for purposes of videotaping the conduct) contrary to Wis. Stat. § 948.05(1)(a) (1995–96).[1] After the preliminary hearing, the State filed a two-count information that restated the child sexual exploitation charge and added a charge of child enticement (causing or attempting to cause a child to go into a secluded place with intent to have sexual contact or intercourse) contrary to Wis. Stat. § 948.07(1).

¶ 10. Derango pled not guilty and moved to dismiss, alleging that the counts were multiplicitous and that the evidence was insufficient to support the bindover. The Circuit Court for Kenosha County, Judge Emmanuel J. Vuvunas, presiding, denied the motion. Derango then unsuccessfully petitioned the court of appeals for leave to appeal. Derango also

---

[1] Unless otherwise noted, all further references to the Wisconsin Statutes are to the 1995–96 version.

moved to exclude the videotapes from evidence. The circuit court denied that motion as well.

¶ 11. On July 17 and 18, 1997, the case was tried to a jury. At the close of the evidence, the court permitted the State to amend the information to conform to the proof, downgrading count one to attempted sexual exploitation, and changing count two to add violations of subsections (3) and (4) (intent to expose or cause a child to expose a sex organ, or take a picture of a child engaging in sexually explicit conduct) to the previously alleged violation of subsection (1) of Wis. Stat. § 948.07 as the basis for the child enticement charge. The jury found Derango guilty of both counts, and he was placed on four years probation. Derango appealed, and the court of appeals affirmed. *State v. Derango*, 229 Wis. 2d 1, 599 N.W.2d 27 (Ct. App. 1999).

¶ 12. Derango argues five grounds for reversal:[2] 1) he was denied the right to a unanimous jury verdict on count two, contrary to art. I, sec. 5 of the Wisconsin Constitution, 2) his conviction for both attempted child sexual exploitation and child enticement as a result of a single telephone call is multiplicitous, 3) the circuit court erred in admitting the videotapes as other acts evidence under Wis. Stat. § (Rule) 904.04(2), 4) the circuit court erred by permitting the State to amend the information at the close of the evidence, and 5) the evidence was not sufficient to support the guilty verdicts. We address each argument in turn.

---

[2] He has dropped his claims of error, made in the court of appeals, regarding the sufficiency of the preliminary hearing and the denial of a lesser included offense instruction.

## I. Unanimity

¶ 13. The Wisconsin Constitution's guarantee of a right to trial by jury includes the right to a unanimous verdict with respect to the ultimate issue of guilt or innocence. Wis. Const., art. I, §§ 5 and 7; *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979); *Vogel v. State*, 138 Wis. 315, 332–33, 119 N.W. 190 (1909); *Boldt v. State*, 72 Wis. 7, 14–16, 38 N.W. 177 (1888). "The principal justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense." *State v. Lomagro*, 113 Wis. 2d 582, 591, 335 N.W.2d 583 (1983); *see also Holland*, 91 Wis. 2d at 138 (requirement of jury unanimity linked to due process requirement of proof of each element of the offense beyond a reasonable doubt, citing *In Re Winship*, 397 U.S. 358 (1970)).

¶ 14. Jury unanimity, however, is required "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and. . .not. . .with respect to the alternative means or ways in which the crime can be committed." *Holland*, 91 Wis. 2d at 143. The threshold question in a unanimity challenge, therefore, is whether the statute creates multiple offenses or a single offense with multiple modes of commission. *Id.*; *see also State v. Hammer*, 216 Wis. 2d 214, 219, 576 N.W.2d 285 (Ct. App. 1997).

¶ 15. To resolve the question, we examine four factors: 1) the language of the statute, 2) the legislative history and context of the statute, 3) the nature of the proscribed conduct, and 4) the appropriateness of mul-

tiple punishment for the conduct. *Hammer*, 216 Wis. 2d at 220 (citing *Manson v. State*, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981)). The point is to determine legislative intent: did the legislature intend to create multiple, separate offenses, or a single offense capable of being committed in several different ways? *Id.*

¶ 16. As always, we look first at the language of the statute. The offense of child enticement, Wis. Stat. § 948.07, is defined as:

> Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony:
>
> (1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02 or 948.095.
>
> (2) Causing the child to engage in prostitution.
>
> (3) Exposing a sex organ to the child or causing the child to expose a sex organ in violation of s. 948.10.
>
> (4) Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.
>
> (5) Causing bodily or mental harm to the child.
>
> (6) Giving or selling to the child a controlled substance or controlled substance analog in violation of ch. 961.

¶ 17. The statute, by its straightforward language, creates one offense with multiple modes of commission. It criminalizes the act of causing or attempting to cause a child to go into a vehicle, building, room or other secluded place with *any* of six

possible prohibited intents. The act of enticement is the crime, not the underlying intended sexual or other misconduct.

¶ 18. This reading of the statute is consistent with prior interpretations, all of which have concluded that the act (or attempt) of enticement—luring a child to a secluded place, away from the protections of the general public—is itself the prohibited act. In *State v. Hanson*, 182 Wis. 2d 481, 513 N.W.2d 700 (Ct. App. 1994), the court of appeals considered a defendant's claim that the statutory penalty scheme of the child enticement statute was irrational. The defendant argued that there was no legitimate reason that enticement to commit the act of indecent exposure should have a greater penalty than indecent exposure itself. *Id.* at 485–86.

¶ 19. The court concluded that there was sufficient justification for the disparity because:

> [The] enticement of a child is "a social evil in and of itself regardless of the specific sexual motive which causes the defendant to act." The gravamen of the crime is not the commission of an enumerated act, but succeeding in getting a child to enter a place with intent to commit such a crime.

*Id.* at 487 (citation omitted). *See also Huebner v. State*, 33 Wis. 2d 505, 513, 147 N.W.2d 646 (1967)(interpreting Wis. Stat. § 944.12 (1965), the predecessor to Wis. Stat. § 948.07).

¶ 20. The legislative history of the statute also supports our conclusion that the child enticement statute creates a single crime with multiple modes of commission, rather than multiple, separate offenses. Wisconsin Stat. § 948.07 was created by 1987 Wis. Act 332, § 55 as part of a revision of state law relating to

734

crimes against children. The predecessor to § 948.07 did not set forth a specific list of requisite intents, but referred to the general intent to "commit a crime against sexual morality."[3] The drafting file indicates that the list of enumerated purposes in the current version of the statute was intended to replace and clarify the "crime against sexual morality" language with a more specific elucidation of prohibited intents which, if present, satisfy the *mens rea* or state of mind element of this offense. 1987 S.B. 203. There is no indication in the legislative history that the legislature intended to take what was once a single crime and replace it with six.

¶ 21. Finally, our assessment of the nature of the proscribed conduct and the appropriateness of multiple punishments leads us to conclude that one crime with separate modes of commission was intended. The proscribed conduct here is the enticement of a child to a secluded place for some improper, usually sexual, purpose. We have previously concluded that acts warrant separate punishment when they are separate in time or are significantly different in nature. *State v. Sauceda*, 168 Wis. 2d 486, 499–500, 485 N.W.2d 1 (1992) (quoting *State v. Eisch*, 96 Wis. 2d 25, 31, 291 N.W.2d 800 (1980)). Here, there is only one act, enticing a child, committed with one or more of six possible mental states. We think it likely in this context that a defendant might very often possess more than one prohibited intention when enticing a child. Intent to have sexual intercourse, for example, obviously also encom-

---

[3] Wis. Stat. § 944.12 (1985–86): "Enticing a child for immoral purposes. Any person 18 years of age or older who, with intent to commit a crime against sexual morality, persuades or entices any child under 18 years of age into any vehicle, building, room or secluded place is guilty of a Class C felony."

passes intent to expose or cause the child to expose a sex organ; or, a defendant may entice a child with the dual purpose of giving her drugs *and* exploiting her sexually. Yet, only one crime is committed. Multiple punishments for a single act committed with more than one prohibited intent would not be appropriate under this statute.

¶ 22. Where, as here, the statute creates one crime with alternate modes of commission, our cases have held that unanimity is not required unless the alternate modes of commission are conceptually distinct. *Manson*, 101 Wis. 2d at 430; *Holland*, 91 Wis. 2d at 139. *See also State v. Seymour*, 183 Wis. 2d 683, 697–98, 515 N.W.2d 874 (1994); *State v. Gomaz*, 141 Wis. 2d 302, 312, 414 N.W.2d 626 (1987); *State v. Gustafson*, 119 Wis. 2d 676, 695–96, 351 N.W.2d 653 (1984); *Lomagro*, 113 Wis. 2d at 591–98; *State v. Giwosky*, 109 Wis. 2d 446, 453–56, 326 N.W.2d 232 (1982); *State v. Cheers*, 102 Wis. 2d 367, 399–402, 306 N.W.2d 676 (1981); *State v. Baldwin*, 101 Wis. 2d 441, 449–50, 304 N.W.2d 742 (1981). This "conceptually distinct" test, however, is derived from *United States v. Gipson*, 553 F.2d 453, 456–59 (5th Cir. 1977), a once influential unanimity case. However, in *Schad v. Arizona*, 501 U.S. 624, 635 (1991), the United States Supreme Court rejected *Gipson*'s approach in favor of a constitutional test for unanimity challenges that focuses on an evaluation of the fundamental fairness and rationality of the legislature's choice to provide for a single offense with alternate modes of commission. *Id.* at 637. More specifically, the Supreme Court in *Schad* held:

We are convinced, however, of the impracticability of trying to derive any single test for the level of

definitional and verdict specificity permitted by the Constitution, and we think that instead of such a test our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness and for the rationality that is an essential component of that fairness. In translating these demands for fairness and rationality into concrete judgments about the adequacy of legislative determinations, we look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing the moral and practical equivalence of the different mental states that may satisfy the mens rea element of a single offense. The enquiry is undertaken with a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime.

*Id.* at 637–38 (citation omitted).

¶ 23. *Schad* was a capital murder case in which the jury was not required to unanimously agree on either of two alternate mental states for the crime: premeditation and felony murder (murder committed in the course of a felony, in that case, a robbery). The Supreme Court noted that the acceptability of alternate mental states for the crime of murder had lengthy historical roots, and the alternate mental states were essentially morally equivalent. Accordingly, the Court concluded that due process—fundamental fairness and rationality—did not require unanimity. *Id.* at 645.

¶ 24. Applying *Schad*'s due process test of fundamental fairness and rationality here, we conclude that unanimity was not required. We start with *Schad*'s presumption in favor of the legislative determination to create a single crime with alternate modes of commission, for which unanimity is not required. The child

enticement statute as currently written does not have a lengthy history to look to as an indicia of what is acceptable as fundamentally fair; but *Schad* recognized that this might often be the case with modern criminal statutes. *Id.* at 640 n.7. The alternate mental states for the crime of child enticement are clearly conceptually and morally equivalent: they all relate to causing physical, sexual or mental harm to a child. Accordingly, fundamental fairness does not require unanimity as to the alternate modes of commission of the crime of child enticement under the due process test established in *Schad*.

¶ 25. Therefore, because the child enticement statute creates one crime with multiple modes of commission, and the alternate modes of commission are not so dissimilar in concept or moral equivalency as to implicate fundamental fairness, unanimity was not required. The circuit court properly instructed the jury that they could find Derango guilty of child enticement if they found beyond a reasonable doubt that he attempted to cause Jessica to go into a secluded place with the intent to "have sexual contact with Jessica, expose a sex organ to Jessica, cause Jessica to expose a sex organ, or take pictures of Jessica engaging in sexually explicit conduct."

## II. Multiplicity

¶ 26. Derango also contends that his conviction for both attempted child sexual exploitation and child enticement as a result of a single telephone call is multiplicitous and therefore violates his protection against double jeopardy under the Fifth Amendment to the United States Constitution and article I, section 8 of

the Wisconsin Constitution.[4] The double jeopardy clauses of the federal and state constitutions are "intended to provide three protections: protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction; and protection against multiple punishments for the same offense." *Sauceda*, 168 Wis. 2d at 492, (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

¶ 27. Multiplicity challenges fall into the third category, and usually arise in two different situations: 1) when a single course of conduct is charged in multiple counts of the same statutory offense (the "continuous offense" cases), and 2) when a single criminal act encompasses the elements of more than one distinct statutory crime. *State v. Lechner*, 217 Wis. 2d 392, 401–02, 576 N.W.2d 912 (1998); *State v. Rabe*, 96 Wis. 2d 48, 65, 291 N.W.2d 809 (1980). This case presents the second situation.

¶ 28. Multiplicity (and therefore double jeopardy) is implicated only to the extent of preventing a court from imposing a greater penalty than the legislature intended. *Lechner*, 217 Wis. 2d at 402 ("[a]

---

[4] The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. The Wisconsin Constitution's double jeopardy clause is essentially the same: "[N]o person for the same offense may be put twice in jeopardy of punishment." Wis. Const. art. I, § 8. Given this similarity, this court has accepted the double jeopardy jurisprudence of the United States Supreme Court as controlling the interpretation of both clauses. *State v. Lechner*, 217 Wis. 2d 392, 401 n.5, 576 N.W.2d 912 (1998).

defendant may be charged and convicted of multiple counts or crimes arising out of one criminal act only if the legislature intends it"); *see also Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Sauceda*, 168 Wis. 2d at 492; *State v. Gordon*, 111 Wis. 2d 133, 137, 330 N.W.2d 564 (1983). In other words, because double jeopardy protection prohibits double punishment for the "same offense," the focus of the inquiry is whether the "same offense" is actually being punished twice, or whether the legislature indeed intended to establish separate offenses subjecting an offender to separate, although cumulative, punishments for the same act.

> The United States Supreme Court has determined that where a court imposes multiple punishment in a single trial for violations of two or more criminal statutes arising from the same criminal conduct, the constitutionality of the multiple punishment depends on whether the state legislature intended that the violations constitute a single offense or two offenses, that is whether the legislature intended one punishment or multiple punishment.

*Gordon*, 111 Wis. 2d at 137 (citing *Hunter*, 459 U.S. at 366, and *Pearce*, 395 U.S. at 717).

¶ 29. We have established a two-part test for analyzing multiplicity challenges. *Rabe*, 96 Wis. 2d at 63. The first part consists of an analysis under *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether the offenses are identical in law and fact. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other

740

does not." *Blockburger*, 284 U.S. at 304. The second part, which we reach if the offenses are not identical in law and fact, is an inquiry into legislative intent. *Rabe*, 96 Wis. 2d at 63.

¶ 30.　The *Blockburger* test requires us to consider whether each of the offenses in this case requires proof of an element or fact that the other does not. *Sauceda*, 168 Wis. 2d at 493 n.8. If, under this test, the offenses are identical in law and fact, then charging both is multiplicitous and therefore unconstitutional. *State v. Grayson*, 172 Wis. 2d 156, 159, 493 N.W.2d 23 (1992). If under the *Blockburger* test the offenses are different in law or fact, a presumption arises that the legislature intended to permit cumulative punishments for both offenses. *Lechner*, 217 Wis. 2d at 407; *Sauceda*, 168 Wis. 2d at 496. This presumption can only be rebutted by clear legislative intent to the contrary. *Lechner*, 217 Wis. 2d at 407; *State v. Kuntz*, 160 Wis. 2d 722, 755, 467 N.W.2d 531 (1991).

¶ 31.　The defendant concedes that the offenses of child enticement and child sexual exploitation are not identical in law, and we agree. The child enticement statute is set forth above and requires proof of the following elements: 1) that the defendant caused or attempted to cause a child to go into a vehicle, building, room or secluded place; 2) that the defendant did so with any one of the six enumerated intents, generally relating to sex and drug crimes; and 3) that the victim had not attained the age of 18. Wis. Stat. § 948.07; Wis JI—Criminal 2134.

¶ 32.　Child sexual exploitation, on the other hand, is defined as follows:

> Sexual exploitation of a child. (1) Whoever does any of the following with knowledge of the character and content of the sexually explicit conduct involving the child is guilty of a Class C felony:
>
> (a) Employs, uses, persuades, induces, entices or coerces any child to engage in sexually explicit conduct for the purpose of photographing, filming, videotaping, recording the sound of or displaying in any way the conduct.

Wis. Stat. § 948.05(1)(a). This requires proof of different elements: 1) that the defendant employed, used, persuaded, induced, enticed or coerced the victim to engage in sexually explicit conduct; 2) that the defendant did so for the purpose of photographing, filming, videotaping or otherwise recording the conduct; and 3) that the victim had not attained the age of 18. Wis. Stat. § 948.05(1)(a).[5]

¶ 33. These two statutes undeniably contain the same element regarding the victim's underage status. There is also some overlap in mental states: the intent or purpose to engage a child in sexual conduct, variously defined, as well as the intent or purpose to photograph the conduct in one way or another. However, the first element of each offense is significantly different. As we have noted in our discussion of the unanimity question, the focus of the child enticement

---

[5] This case involves a charge of attempted child sexual exploitation, which requires proof not of a completed act of exploitation, but, rather, "acts which demonstrate unequivocally, under all of the circumstances, that [the defendant] intended to and would have committed the crime [of child exploitation] except for the intervention of another person or some other extraneous factor." Wis. Stat. § 939.32; Wis JI—Criminal 580.

statute—captured in its first element—is *not* the underlying sex crime itself but the act of removing or attempting to remove a child into a secluded place, whether a vehicle, a building, a room or another place of seclusion, with the purpose of committing the underlying sex crime. The focus of the child sexual exploitation statute, in contrast, is the sex crime itself—the act of engaging a child (or in this case attempting to engage a child) in sexually explicit conduct for the purpose of photographing it.

¶ 34. The two offenses are, therefore, legally distinct, and so we presume the legislature intended to allow cumulative punishment. The presumption can be overcome only by a "clear indication of legislative intent to the contrary." *Kuntz*, 160 Wis. 2d at 756. As in the jury unanimity analysis, legislative intent is evaluated by reference to the statutory language, the legislative history, the nature of the proscribed conduct and the appropriateness of multiple punishment. *Lechner*, 217 Wis. 2d at 407; *Grayson*, 172 Wis. 2d at 160; *Kuntz*, 160 Wis. 2d at 756.

¶ 35. Nothing in the statutory language leads us to conclude that the legislature intended these two separate and distinct statutes to create the same offense and therefore a single punishment. Derango argues that both statutes proscribe the identical conduct—the act of procuring a child for performance of a sex act—but this, as noted above, is clearly not true. He cites no legislative history in support of his position. His only argument on the nature of the offenses and the propriety of multiple punishment is that the two statutes are "inextricably intertwined," effectively punishing the same conduct twice when the legislative

intent to protect children from this sort of conduct could just as well be accomplished by a single count.

¶ 36. But the legislature is entitled to attack a discrete social problem by writing multiple statutes with subtle elemental differences in order to capture and criminalize the widest possible variety of conduct (here, the many variations of sexual abuse and exploitation of children). And prosecutors are entitled to charge one act as more than one statutory offense, if the legislative intent to permit multiple punishment is apparent. Here, each statute prohibits conduct of a different nature. Prosecution of Derango's single telephone call under both statutes is therefore not multiplicitous.

### III. Other Acts Evidence

██

¶ 37. Derango also contends that the circuit court erred in admitting the videotapes confiscated from his home as other acts evidence pursuant to Wis. Stat. § (Rule) 904.04(2). Like other evidentiary decisions, the admission of other acts evidence is a matter entrusted to the sound discretion of the circuit court, and will be sustained on appellate review if the record reflects that the circuit court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *State v. Sullivan*, 216 Wis. 2d 768, 780–81, 576 N.W.2d 30 (1998). If the circuit court failed to articulate its reasoning, we independently examine the record to determine if there was a reasonable basis for the circuit court's decision. *Id.* at 781.

¶ 38. In admitting the videotapes, the court stated:

[W]hole question in a case of enticement is the intent of the defendant. Now to me, if you have films that he was soliciting this young lady or asking her to participate in these films, and you have films which show the type of behavior that he was endeavoring to induce her to do, that certainly goes to his, the issue of intent and his motive in making these statements to this young girl.

. . . .

Obviously the issue [is] what do you want to do with this young lady and it goes to intent. The issue in this case is what he intended and what he wanted to accomplish. His motive for talking to this girl and his intent in talking to this girl. . .I can't think of any evidence that's more relevant, especially to those issues, especially in the type of case it is as to his intent and to his motive and in talking to this young lady and doing the things that he, that is alleged to by the state. As to—and then the Court must take a look and judge is it unfairly prejudicial. Well, I assume the state does want to prejudice the jury. They want to prejudice the jury to accepting their version of the facts, but is it unfair? Certainly it's not unfair. We have a situation here where what is being used is not something that's being manufactured by the District Attorney or being brought in from some third source, but things that he keeps and deems to be available and are found in, I take it, a search warrant of his particular place. I don't see any unfair prejudice. I will allow this evidence.

¶ 39. We have established a three-step framework for analyzing other acts evidence: 1) Is the other acts evidence offered for a permitted purpose under Rule 904.04(2), 2) is the other acts evidence relevant under Rule 904.01, and 3) is the probative value of the

evidence substantially outweighed by the danger of unfair prejudice, confusion, or delay under Rule 904.03? *Sullivan*, 216 Wis. 2d at 772–73.[6]

¶ 40. The circuit court admitted the videotapes on the issue of the defendant's intent and motive, which are enumerated permitted purposes under Rule 904.04(2). Derango does not argue that intent and motive are not permitted purposes for the admission of "other acts" evidence, only that his possession of "adult" videotapes does nothing to demonstrate that he had the motive and intent to engage in child enticement and exploitation, since no witnesses could establish the age of the girls on the tapes. This is an argument about relevance and relative probative value.

¶ 41. *Sullivan* explained that the relevance inquiry for these purposes has two facets. *Id.* at 785.

---

[6] Wisconsin Stat. § (Rule) 904.04(2):

> (2) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Wisconsin Stat. § (Rule) 904.01:

> 904.01 Definition of "relevant evidence." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Wisconsin Stat. § (Rule) 904.03:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The first asks whether the evidence relates to a fact or proposition that is of consequence to the determination of the action. *Id.* The second measures the probative value—whether the evidence has a tendency to make a consequential fact more or less probable than it would be without the evidence. *Id.* at 785–86. Probative value of other acts evidence depends upon the other act's nearness in time, place and circumstance to the crime charged or the fact or proposition the State seeks to prove. *Id.* at 786.

¶ 42. The record reflects, and the circuit court found, striking similarities between what Derango propositioned Jessica to do and what was depicted on the videotapes. Derango offered Jessica $300 to perform a striptease and other sex acts on videotape. The "other acts" videotapes, which appeared to be homemade, depicted girls apparently in their mid- to late-teens (some posing as adolescent girls) performing stripteases and other sex acts. To convict Derango of attempted child sexual exploitation, the State had to show that he attempted to persuade Jessica to engage in sexually explicit conduct, and that he intended to videotape the conduct. To convict Derango of child enticement, the State had to show that Derango attempted to cause Jessica to go to a secluded place with the intent to engage in sexual contact or intercourse, to expose a sex organ or cause her to expose a sex organ, or to take a picture of her engaging in sexually explicit conduct. Clearly the videotapes relate to a fact or proposition of consequence to the determination.

¶ 43. They are also highly probative, based upon the strong identity of circumstances: the videotapes depict girls of approximately Jessica's age doing precisely what Derango was propositioning Jessica to do. That the *exact* age of the girls on the videotapes was not

established does not diminish the probative value of the videotapes one iota. As the court of appeals noted here: "[o]ther acts evidence need not be identical to the charged conduct." *Derango*, 229 Wis. 2d at 21. *Sullivan* requires only similarity between the charged offense and the other acts evidence, and the stronger the similarity, the higher the probative value. *Sullivan*, 216 Wis. 2d at 786–87. By this measure, the videotapes were enormously probative.

¶ 44. The real issue here is whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

> Unfair prejudice results when the proffered evidence has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case.

*Id.* at 789–90. Derango argues that the evidence was unfairly prejudicial because it appealed to the jury's sense of morality and decency, aroused disdain for him, and produced an instinct to punish.

¶ 45. We conclude that the strong probative value of the videotapes was not substantially outweighed by the danger of unfair prejudice in this case. As the court of appeals observed, "[o]n the one hand, the sexually explicit nature of the tapes likely provoked a strong reaction from the jury. . .[but] [o]n the other hand, the nature of the crimes was highly sensitive to begin with," so the jury was probably prepared to deal appropriately with this graphic kind of evidence. *Derango*, 229 Wis. 2d at 24. The record suggests that the State attempted to tailor the videotape evidence in order to reduce the possibility of prejudice. The State

did not play the tapes in their entirety, but instead excluded some of the more explicit scenes, leaving Detective Beckman to briefly describe them in general terms.

¶ 46. Furthermore, the circuit court gave a proper cautionary instruction. *Sullivan* affirmed that cautionary instructions "can go ' "far to cure any adverse effect attendant with the admission of the [other acts] evidence." ' " *Sullivan*, 216 Wis. 2d at 791 (citation omitted). Here, the circuit court instructed the jurors that:

> Evidence has been received regarding other conduct of the defendant for which the defendant is not on trial.

> Specifically, evidence has been received that the defendant had in his possession videotapes showing sexually explicit conduct and a handwritten list. If you find that this conduct did occur, you should consider it only on the issues of motive, opportunity, intent, and preparation or plan.

> You may not consider this evidence to conclude that the defendant has a certain character or certain character trait and that the defendant acted in conformity with that trait or character with respect to the offense charged in this case. The evidence was received on the issues of motive, that is whether the defendant had a reason to desire the result of the crime, opportunity, that is whether the defendant had the opportunity to commit offense charged, intent that is whether the defendant acted with a state of mind that is required for this offense, preparation or plan, that is whether such other conduct of the defendant was part of a design or scheme that led to the commission of the offense charged.

749

You may consider this evidence only for the purposes I have described, giving to it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person and for that reason is guilty of the offense charged.

¶ 47. Although some cautionary instructions may be so broad that their effectiveness is significantly diminished, we conclude that this cautionary instruction was not. It derives from the pattern jury instruction suggested for use in this situation, and specifically advised the jurors of the exact purposes for which they were permitted, in their discretion, to consider the videotape evidence.[7] *See* Wis JI—Criminal 275. The instruction properly told the jurors what *not* to conclude from the videotapes, that is, explicitly cautioned against the prohibited character and propensity inferences. Under these circumstances, we can find no erroneous exercise of discretion on the part of the circuit court in admitting the videotape evidence.

## IV. Amendment of the Information

¶ 48. Derango also argues that the circuit court erred by permitting the State to file an amended information, at the close of the evidence, changing the child enticement count to allege additional mental states under Wis. Stat. § 948.07(3) and (4). Derango contends that he was prejudiced by the amendment because the late filing deprived him of the opportunity to defend the charge. Specifically, Derango asks us to consider

[7] The cautionary instruction here went beyond the purposes for which the circuit court received the evidence. The better practice is to include in the jury instruction reference to only those purposes for which the court has received the other acts evidence.

whether Wis. Stat. § 971.29(2) *ever* permits the amendment of criminal charges after testimony concludes.

¶ 49. We have previously declined to adopt a blanket rule automatically assuming prejudice when an amendment is made at a particular point in the proceedings, and we decline to do so here. *See Whitaker v. State,* 83 Wis. 2d 368, 265 N.W.2d 575 (1978) (Wisconsin Stat. § 971.29 cannot be construed to deny the State, upon leave of court, the discretion to amend an information before trial as long as defendant's rights were not prejudiced). There is no need for a *per se* rule, as the statute amply protects defendants by requiring a case-by-case examination of prejudice.

¶ 50. Wisconsin Stat. § 971.29(2) provides that a court "may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant." The purpose of a charging document is to inform the accused of the acts he is alleged to have committed in order to enable him to prepare a defense. *State v. Waste Management of Wisconsin, Inc.,* 81 Wis. 2d 555, 566, 261 N.W.2d 147 (1978). We have previously concluded that when the defendant has adequate notice of the amended count—in that the amendment does not change the crime charged and the alleged offense remains the same and results from the same transaction—a defendant is not prejudiced. *State v. Gerard,* 189 Wis. 2d 505, 517 n.9, 525 N.W.2d 718 (1995). *See also State v. Wickstrom,* 118 Wis. 2d 339, 348, 348 N.W.2d 183 (Ct. App. 1984).

¶ 51. Here, the prosecution did not charge Derango with an additional crime, nor did it change the crimes originally charged. The amended information

751

merely added several statutorily defined possible mental states which might satisfy the intent element of the original child enticement offense charged in count two, conforming that charge to the proof in the case. The additional intents alleged were closely related to the original (intent to have sexual contact or intercourse, intent to expose a sex organ, and intent to photograph sexually explicit conduct), and derived from facts that were alleged in the original complaint and testified to at the preliminary hearing, and therefore were clearly available to the defendant from the beginning. In short, the amended information did not fundamentally change the legal or factual parameters of the case at all: the charged offenses in the original and amended information remained the same and all resulted from the same transaction. Under these circumstances, Derango cannot possibly have been prejudiced, and the circuit court did not err by permitting the amendment.

## V. Sufficiency of the Evidence

¶ 52. Finally, Derango alleges that the evidence in this case was insufficient to convict him of child enticement and attempted child sexual exploitation. The defendant bears a heavy burden. We do not substitute our judgment for that of the jury, and therefore will not reverse unless the evidence, when viewed in the light most favorable to the verdict, "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) (citation omitted).

¶ 53. Derango asserts that the evidence was insufficient to support the convictions because the whole case rested on one telephone call. He claims

there was insufficient evidence to establish his intent to follow through with either crime.

¶ 54. The singular telephone call, however, was absolutely unambiguous and quite enough on its own to support the verdicts. In it, Derango persistently offered 15-year-old Jessica $300 to perform a striptease and other sex acts on videotape, "would not take no for an answer," and said he would call her back in order to arrange it. The jury reasonably inferred that he did not mean to do the videotaping in a public place.

¶ 55. Besides, the telephone call was not the only evidence. Derango's criminal purpose—and his intent to follow through with the crimes but for Jessica's refusal to go along—was corroborated by (1) the evidence regarding his initial encounter with Jessica at McDonald's, (2) the videotapes depicting young girls in secluded places doing exactly what he was trying to get Jessica to do, and (3) his own rather incredible statement to the police detective in which he suggested it was Jessica who propositioned him rather than the other way around. Viewed in the light most favorable to the verdict, the evidence was sufficient to support Derango's convictions for attempted child sexual exploitation and child enticement beyond a reasonable doubt.

¶ 56. Therefore, we hold that 1) jury unanimity was not required on the intent component of the charge of child enticement under Wis. Stat. § 948.07, 2) convicting the defendant of both child enticement and attempted child sexual exploitation as a result of a single telephone call was not multiplicitous, 3) the circuit court did not err by admitting the videotapes as "other acts" evidence, 4) the defendant was not prejudiced by the circuit court's acceptance of the

amended information at the close of testimony, and 5) the evidence was sufficient to convict Derango of both child enticement and attempted child sexual exploitation. Accordingly, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 57. DAVID T. PROSSER, J., did not participate.