COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP662-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF1280

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JOSHUA ISIAH MORRIS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Reversed.*

Before Neubauer, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Joshua Isiah Morris appeals from a judgment of conviction entered upon a jury verdict and from an order denying his postconviction motion for relief.   He contends that he received ineffective assistance of counsel because his trial attorney failed to object to two different theories of guilt articulated in the State's closing argument.   We agree that counsel was deficient and that his error deprived Morris of a unanimous verdict on one of the counts against him.   We reverse.

¶2      The State initially charged Morris with four counts in connection with a shooting incident that resulted in the death of Lavelle Monroe: (1) first-degree intentional homicide while armed with a dangerous weapon; (2) possession of a firearm by a felon; (3) first-degree recklessly endangering safety while armed (by shooting into the air); and (4) recklessly endangering safety while armed (by shooting toward victim).   On the eve of Morris's jury trial, the State filed an amended information adding a party-to-a-crime allegation to the first-degree homicide charge, leaving the felon-in-possession charge unchanged, and consolidating the third and fourth charges into a single count of recklessly endangering safety while armed (now also as a party to a crime).   The State explained this amendment as follows:

> The original counts of 3 and 4 of recklessly endangering safety were first intended for the shot that went through the leg and one shot that went into the arm,[1] which in this situation were likely not the fatal shots.   There were two shots to the torso, one striking the heart and one striking the lungs.   So as I was contemplating this last night, I was worried about having unanimity.   I can see the two counts,

---

[1] It is unclear to this court why this characterization is inconsistent with the original information, in which these two counts are described as relating to a "first shot—in the air" and a "second shot—toward the direction of [Monroe]."   As explained later, the characterization in the original information more closely matches the State's closing argument—but this is not relevant to the question of whether counsel's failure to object during closing was appropriate.

one for the shot to the leg, one for the shot to the arm, but I can also see that it's that conduct as a whole, the shots to the extremities, that could be considered recklessly endangering. So to avoid any appellate issue or unanimity issue, I bring that to the Court and counsels' attention. Whatever position they take, I'm willing to agree with. If they think it should be two separate counts and identify the body parts, then I would ask to proceed on that. If the defense thinks that's [multiplicitous] and should only be one count, I would ask to proceed on the amended information. Either way with party to a crime.

¶3 The defense did not object. Trial proceeded on the amended information, which did not specify the allegedly endangering conduct but stated only that Morris "did recklessly endanger the safety of [Monroe]."

¶4 At trial, Monroe's fiancée testified that on the night of the incident, she and Monroe went to her daughter's twenty-first birthday party. After she asked Monroe to tell people that the party was over, she saw him running outside and then turning a corner. She saw Morris "in the middle of the street … shooting in the air with a gun" with his arm "fully extended in the air." She then saw Morris go around the same corner that Monroe had turned.

¶5 Alexander Lease, who had been at the party with Morris, testified that he followed Monroe and Morris around the corner and into an alley. He said that he saw Monroe and Morris walking together "side by side'ish" before they began fighting and that "[Morris] pushed [Monroe] off him." He testified that immediately after that, he saw Morris shoot Monroe multiple times. He admitted that the first time he spoke with police about the incident, he denied that he saw the shooting. On cross-examination, during which defense counsel questioned him about fighting between himself and Monroe on the night in question, he admitted that Monroe "slapped [him] in the back of the head and punched [him] in the chin" upon leaving the party (before he followed Monroe and Morris into the alley).

3

¶6     With respect to the charge of recklessly endangering safety, the State argued in closing that "any gunshot anywhere near a person, in this case it's Lavelle Monroe, or anyone, gunshot, whether it's in the air or to the ground, shooting guns in the proximity of people is reckless behavior.…  [T]hat's the basis of Count 3." Morris's counsel did not object.  The defense suggested in closing that Lease shot Monroe, arguing that the State "should have brought [the case] against Alexander Lease" and attacking Lease's testimony as "contradictory and self-serving." Ultimately, the jury found Morris not guilty of the homicide charge but guilty of both other counts (being a felon in possession and recklessly endangering safety). The trial court sentenced Morris to a total of 17.5 years of confinement followed by 10 years of extended supervision.

¶7     Morris filed a postconviction motion alleging that his trial counsel was ineffective in failing to object to the State's closing argument, and arguing that the State's theory of guilt denied him a unanimous verdict on the count of reckless endangerment.  At a hearing on this motion, trial counsel testified that he deliberately chose not to object to the consolidation of the two original reckless endangerment counts because it limited Morris's possible incarceration exposure.[2] He further stated that there had been testimony at trial regarding Morris firing a gun before turning the corner into the alley, and admitted that this created potential ambiguity as to the State's theory of guilt on reckless endangerment.  He could not remember whether it had occurred to him to object to the State's closing argument, and he did not have a strategic reason for not objecting; he testified that he should have asked for clarification on what conduct related to the reckless endangerment charge in either the jury instructions or the verdict form.

_____

[2] Morris "does not fault trial counsel for making this decision" in this appeal.

4

¶8 The trial court denied Morris's motion. The court determined that trial counsel did not perform deficiently because "[t]he split decision made not to object to the State's one comment … is not outside the wide range of professionally competent assistance." The court further found that "[i]t certainly was within the jury's province to find that the defendant was shooting a firearm and endangering the safety of the victim whether it was in the street as witnessed by [the victim's fiancée] or in the alley as witnessed by Alex Lease." Finally, the court noted it was "satisfied that there was jury unanimity on count three." Morris appeals.[3]

¶9 Whether an attorney provided ineffective assistance is a mixed question of law and fact. *State v. Manuel*, 2005 WI 75, ¶26, 281 Wis. 2d 554, 697 N.W.2d 811. We uphold a trial court's factual findings unless they are clearly erroneous, but we independently review whether an attorney's performance is constitutionally deficient as a matter of law. *Id.*

¶10 A defendant asserting ineffective assistance of counsel bears the burden of proving both prongs of the two-prong *Strickland* test applied in Wisconsin in *State v. Mayo*, 2007 WI 78, ¶¶30, 60, 301 Wis. 2d 642, 734 N.W.2d 115. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, a defendant must show that his counsels' performance was deficient or "fell below an objective standard of reasonableness," considering all of the circumstances. *State v. Romero-Georgana*, 2014 WI 83, ¶40, 360 Wis. 2d 522, 849 N.W.2d 668 (quoting *Strickland*, 466 U.S. at 688). Second, a defendant must show that he was prejudiced as a result of his counsels' deficient performances—that, but for counsels' errors,

---

[3] As he did in the trial court, Morris requests a new trial based on ineffective assistance of counsel or, in the alternative, a modification of his sentence "because the factual basis for [his] conviction for first-degree reckless endangerment while armed was unknown at the time of sentencing." Because we reverse for a new trial, we do not address the sentencing issue.

there is a "reasonable probability" that his results would have been different. *Strickland*, 466 U.S. at 691-92, 694.

¶11 Morris argues that his trial counsel's error deprived him of the right to a unanimous verdict on the reckless endangerment charge; he asserts that "[t]here is no possible way to know which theory of guilt"—shooting into the air in the street or shooting at the victim in the alley—"led to the jury verdict on the count of first-degree reckless endangerment or whether the jury unanimously agreed based on the same theory." As our supreme court has explained, the State is generally prohibited from joining two or more separate offenses in a single count to guarantee, among other things, jury unanimity. *State v. Lomagro*, 113 Wis. 2d 582, 586-87, 335 N.W.2d 583 (1983); *see also State v. Johnson*, 2001 WI 52, ¶11, 243 Wis. 2d 365, 627 N.W.2d 455 (explaining that the right to a unanimous jury verdict on the ultimate issue of guilt or innocence is found in the Wisconsin Constitution's right to trial by jury[4]). "Unanimity demands that the jury be agreed that the defendant committed a specific act the law prohibited." *Holland v. State*, 91 Wis. 2d 134, 140, 280 N.W.2d 288 (1979).

¶12 The requirement of unanimity is satisfied, however, when there is evidence of multiple similar acts in a continuing course of conduct that constitute alternative means of committing a single crime. *See Johnson*, 243 Wis. 2d 365, ¶¶17-22; *Lomagro*, 113 Wis. 2d at 592. For example, our supreme court has affirmed convictions for first-degree sexual assault based on evidence of different acts of nonconsensual sexual intercourse. *Id.* at 594. It has also upheld a conviction for a single count of battery based on evidence of a thrown log and punches and kicks during a fight. *State v. Giwosky*, 109 Wis. 2d 446, 448-49, 451, 326 N.W.2d

---

[4] WIS. CONST. art. I, §§ 5, 7.

232 (1982). The questions of whether a statute creates multiple modes of commission of a single offense and whether it is appropriate to consider multiple acts as similar for the purpose of one charge are legal ones to be reviewed de novo by this court. *State v. Dearborn*, 2008 WI App 131, ¶¶18-19, 313 Wis. 2d 767, 758 N.W.2d 463. In answering the former question, we are to consider, among other things, the language of the statute and the nature of the prohibited conduct. *Id.*, ¶20; *State v. Derango*, 2000 WI 89, ¶15, 236 Wis. 2d 721, 613 N.W.2d 833. In answering the latter question, we are to consider "the fundamental fairness and rationality of the legislature's choice to provide for a single offense with alternate modes of commission." *Id.*, ¶22.

¶13 Here, it is clear that the statute prohibiting "recklessly endangering safety" provides for multiple modes of committing a single crime. *See* WIS. STAT. § 941.30(1) (2023-24)[5] ("Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class F felony."). Its language explicitly contemplates different "circumstances" that could "show utter disregard for human life." *See id.* Under the circumstances presented in Morris's case, shooting a gun into the air on a street with people present could show a disregard for human life just as shooting a gun in the direction of a specific person could. In this respect, the instant case is like *Giwosky*, 109 Wis. 2d at 456, in which the crime of battery, "intentionally committ[ing] 'an act which caused bodily harm,'" could be proven with evidence of several different acts—hitting the victim with a log or punching or kicking him—without violating the requirement for unanimity. *See* WIS. STAT. § 940.19(1).

---

[5] All references to the Wisconsin Statutes are to the 2023-24 version.

¶14 Thus, we turn to the question of whether the multiple modes by which the State alleged that Morris committed reckless endangerment (shooting into the air in the street and shooting at the victim after pursuing him into an alley) in its closing argument are "essentially morally equivalent" such that the need for unanimity is obviated. *See Derango*, 236 Wis. 2d 721, ¶22-24. We agree with Morris that they are not. The State's alternative theories of guilt are conceptually dissimilar and, in our view, not morally equivalent. Hitting a person either with a log or with fists have a similar probability of causing a person a similar sort of harm. *See Giwosky*, 109 Wis. 2d at 458 (holding that because there was no "conceptual distinction between the throwing of the log and the punches and kicks," all of which were "alternate means used … to injure" the victim, unanimity was achieved). But shooting a gun up into the air is different, and (although obviously still reckless and wrong) less likely to cause death than shooting at a person immediately after wrestling with him (i.e., at close range). It strikes us as both irrational and fundamentally unfair to treat the two acts as equivalent. *See Derango*, 236 Wis. 2d 721, ¶22.

¶15 Morris's counsel's failure to object to the alternative theories of guilt presented in the State's closing argument therefore deprived Morris of the unanimous verdict to which he was entitled on reckless endangerment. Counsel offered no rationale or strategic reason for not objecting. Thus, we conclude that counsel was deficient in failing to object. *See Strickland*, 466 U.S. at 687-90.

¶16 We also conclude that the deficiency was prejudicial. *See id.* at 691-92. As a matter of law, Morris was entitled to a unanimous verdict on reckless endangerment by either shooting a gun into the air or shooting a gun at a person. Instead, Morris does not know with certainty what act he stands convicted of—it could be one or the other act or some combination of both. If all jurors were required

to unanimously determine whether Morris committed one of these acts, there is a reasonable probability, in light of evidence from different witnesses, that the result of the trial would have been different. *See id.* In other words, some jurors may have concluded that Morris only shot the gun into the air and did *not* shoot at Monroe, while others may have believed the exact opposite. Moreover, the jury's not guilty verdict for the first-degree intentional homicide, as a party to a crime, charge is further support that there may have been questions as to whether Morris actually fired any shots into the alley towards the victim.

¶17    For the foregoing reasons, we conclude that Morris has carried his burden to show ineffective assistance of counsel and is entitled to a new trial, solely as to the third count, on that basis.

    *By the Court.*—Judgment and order reversed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9

No. 2024AP662-CR(D)

¶18 GROGAN, J. (*dissenting*). The trial court heard testimony at the *Machner*[1] hearing and concluded that Morris's trial counsel did not provide ineffective assistance—that trial counsel's "split decision made not to object to the State's one comment [regarding circumstances that can give rise to reckless endangerment] is not outside the wide range of professionally competent assistance." Morris has not convinced me that the trial court's decision was erroneous. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 (appellant bears the burden to demonstrate how the trial court erred). The trial court's written decision was thorough and lengthy—14 pages. I agree with its analysis, particularly since we have frequently held that it is not deficient performance for defense trial counsel to forgo objecting during closing argument for strategic reasons and because the jury is instructed that closing arguments are not evidence. *See, e.g.*, *State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979) (counsel allowed considerable latitude in closing arguments); *State v. Mayo*, 2007 WI 78, ¶18, 301 Wis. 2d 642, 734 N.W.2d 115 (referencing "standard instructions that opening statements and closing arguments of counsel are not evidence"). Accordingly, I respectfully dissent.

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).