# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2905-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Darryl J. Badzinski, |
| |        Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 345 Wis. 2d 398, 824 N.W.2d 928
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | January 29, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 22, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Dennis Cimpl |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiff-respondent-petitioner, the cause was argued by *Jeffrey J. Kassel*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

    For the defendant-appellant, there was a brief by *Basil M. Loeb* and *Schmidlkofer, Toth, & Loeb, LLC*, Wauwatosa, and oral argument by *Basil M. Loeb*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2905-CR
(L.C. No. 2009CF4756)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

      **v.**

**Darryl J. Badzinski,**

      **Defendant-Appellant.**

**FILED**

**JAN 29, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 ANN WALSH BRADLEY, J. The State of Wisconsin seeks review of an unpublished decision of the court of appeals that reversed both a judgment of conviction and a circuit court order denying post-conviction relief.[1]

¶2 The defendant, Darryl Badzinski, was charged with sexually assaulting his niece, A.R.B. At trial, A.R.B. testified that the assault occurred in the laundry room at a family gathering. During jury deliberations, the jury asked the circuit court if it needed to agree on the location of the

_____

[1] _State v. Badzinski_, No. 2011AP2905-CR, unpublished slip op. (Wis. Ct. App. Nov. 27, 2012) reversing a judgment and order of the circuit court for Milwaukee County, Dennis R. Cimpl, Judge.

assault.   The court responded "no."   The court of appeals determined, however, that this permitted the jury to speculate beyond the evidence and remanded the case for a new trial.

¶3   The State argues that the court of appeals erred in reversing the circuit court.  It contends that the jury did not have to unanimously agree on the location because it is not an essential element of the crime charged.   The State further asserts that the court's response of "no" did not mislead the jury into speculating beyond the evidence.

¶4   In reply, Badzinski maintains that the circuit court's response of "no" deprived him of a unanimous verdict.   He further argues that the circuit court's response of "no" violated his due process rights in that it impermissibly misled the jury into believing that the victim's credibility was irrelevant and that it could speculate beyond the evidence.

¶5   We conclude that the circuit court's response of "no" did not deprive Badzinski of a unanimous verdict.   Jury unanimity is required only on the essential elements of the crime.   Here, the location of the crime was not one of those elements.   Thus, it was not something that the jurors needed to agree upon unanimously.

¶6   We further conclude that Badzinski failed to show that the court's response of "no" was ambiguous or reasonably likely to cause the jury to apply the jury instructions in a manner which violates due process.  Given the evidence presented, the parties' closing arguments, and the court's other instructions, the response was unlikely to mislead the jury into believing

2

that the victim's credibility was irrelevant and that it could speculate beyond the evidence.

¶7   Accordingly, we reverse the court of appeals.

I

¶8   In 2006, Badzinski's then 15-year-old niece, A.R.B., told a sheriff's deputy that she had a history of sexual abuse but declined to provide any details.  Three years later, A.R.B. revealed to her mother that Badzinski molested her when she was five or six years old. She said that it happened at a holiday gathering held at her grandparents' house.

¶9   After A.R.B. and her mother reported the incident to the police, the State charged Badzinski with first-degree sexual assault of a child.  The complaint and information alleged that the assault occurred either at Christmas or Easter time between October 2, 1995, and April 30, 1998.  After Badzinski objected, the State filed an amended information limiting its case to the six dates between 1995 and 1998 when A.R.B.'s grandparents hosted Easter and Christmas gatherings.

¶10  In support of the charges, the State had four witnesses testify at trial: A.R.B., Dr. Liz Ghilardi, Deputy Steven Schmitt, and A.R.B.'s mother.

¶11  A.R.B. testified that during a Christmas or Easter gathering, when she was four to six years old, she stumbled upon Badzinski in the laundry room in her grandparents' basement. A.R.B. did not recall why she entered the laundry room, but guessed she may have been playing hide-and-seek.  She remembered that she was looking for a place to hide.  She stated that when

she entered, Badzinski was sitting against the freezer masturbating. Badzinski then closed the door to the room, had her sit next to him, told her his penis was a toy, and tried to make her touch it. At one point he took her hand and placed it on his penis. She did not recall how long the incident lasted or how it ended.

¶12 Dr. Ghilardi testified as an expert witness on child sexual abuse victims. When discussing their ability to recall events, she explained that it is not uncommon for victims to have trouble remembering peripheral details outside the fact of the assault itself:

> It is quite common they will remember the core details of the assault itself and what happened to their bodies or what they were made to do, whatever the case may be. But they may not be able to remember all of what we call peripheral details, the things going on around them, the party, who was there, what they were wearing, what the perpetrator was wearing, where the dog was, those kind of things. Those memories may fall off more quickly for them than the core event, because that is something that really stood out in their mind.

Dr. Ghilardi further explained that it was quite common for child victims to delay reporting the abuse. She also testified that children who have not disclosed the abuse might manifest their distress in other ways, such as abusing drugs or alcohol or engaging in other self-harming behavior like cutting.

¶13 Deputy Schmitt testified that in April 2006 he was dispatched to the Children's Hospital to do an emergency detention evaluation of A.R.B., who was 15 years old at the time. After noticing numerous cuts on her body, he asked her if

4

she was an abuse or assault victim. A.R.B. responded "yes," but refused to talk about it. The only detail Deputy Schmitt was able to get was that the abuser was a male family member.

¶14 Likewise, A.R.B.'s mother testified that she was unable to get any information about the incident from A.R.B. at that time. It was not until 2009, after another family gathering, that A.R.B. told her mother that Badzinski had been the perpetrator.

¶15 Badzinski had 11 family members testify on his behalf. Their stories were largely consistent. The family got together for Christmas and Easter at A.R.B.'s grandparents' house. Approximately 20 to 25 people would attend. The house was a one-story ranch home with a finished basement and three bedrooms upstairs.[2] The gatherings mainly took place in the basement. The laundry room was in the basement and it contained a freezer. Guests would regularly go to the laundry room to get ice from the freezer and frosted beer mugs. They would also pass by the laundry room when going to the bathroom, which was located next to it. The witnesses agreed that the door to the laundry room was usually kept open. None of the witnesses saw the assault or believed it could have occurred in the laundry room.

¶16 Some of the witnesses also indicated that they were not always in the basement during these gatherings. Some of the witnesses testified that on Easter, if the weather was nice, the

_____

[2] The witnesses used the term "upstairs" to refer to the first floor.

5

family would go outside on the deck. Badzinski's sister stated that the children would play games like hide-and-seek upstairs during the events. His brother-in-law agreed that there were other rooms in the house, such as the upstairs bedrooms, where someone could masturbate unnoticed.

¶17 After the close of evidence, the court read the instructions to the jury. These included the instruction that the jury must follow all the jury instructions and "consider only the evidence received during this trial." The court informed the jury that the State must prove: "One, that this defendant had sexual contact with [A.R.B.]. Two, that [A.R.B.] was under the age of 13 years at the time of alleged sexual contact." It stated that "[t]he burden of establishing every fact necessary to constitute guilt is upon the State." It further instructed "[d]raw your own conclusions from the evidence and decide upon your verdict according to the evidence, under the instructions given to you by the court."

¶18 The jury instructions also addressed the issue of credibility. The court told the jurors that they "are the sole judges of credibility." It suggested numerous factors that the jurors could consider in determining credibility, in addition to "all other facts and circumstances during the trial which tend to support or discredit testimony." The court concluded that instruction by stating, "[i]n every day life you determine for yourselves the reliability of the things people say to you. You should do the same here."

¶19 After closing arguments the court reminded the jurors that "it is a violation of the juror's oath . . . [to] rely on any information outside the evidence." It then indicated that if the jury had any questions during deliberations, it should send a note and the court would respond either orally or in writing.

¶20 During deliberations the jury asked the judge if it must agree where the assault occurred. With the parties' consent, the judge responded that the jury must agree that the assault took place at the address of the gathering.[3] The jury subsequently asked if it needed to agree that the assault occurred in the laundry room. Over the defendant's objections, the judge responded, "no."

¶21 The jury found Badzinski guilty. Badzinski filed a motion for post-conviction relief, arguing that the long delay in reporting by the victim and the non-precise nature of the allegations prevented him from being able to properly prove a defense. He further argued that no rational trier of fact would have believed the victim and that the real controversy had not been tried.

¶22 The State responded that the time period of the alleged assault was sufficiently specific. It further asserted that the verdict was supported by the evidence, as the jury

_____

[3] At oral argument, the State maintained that this initial response was error, but that the error was harmless. It stated that the judge "gave a wrong answer, with the consent of both parties, and the error inured to Mr. Badzinski's benefit."

could have chosen to believe A.R.B. In addition, the State averred that the real controversy was fully tried because the jury did not have to agree on the location of the assault, only that the elements of the offense were met. The State advanced that a juror may be convinced that the crime occurred while maintaining a question about a non-essential or peripheral fact. Further, the jury was not required to believe all of A.R.B.'s testimony. The circuit court denied Badzinski's motion, adopting the the arguments in the State's brief.

¶23 On appeal, Badzinski argued that: (1) the amended information was unconstitutionally vague because it gave six possible dates over three years on which the allegation could have occurred, (2) there was insufficient evidence to support the conviction, (3) the real controversy was not fully tried, and (4) he was denied his right to an unanimous verdict when the trial court told the jurors that they did not need to agree on whether the sexual assault occurred in the laundry room. State v. Badzinski, No. 2011AP2905-CR, unpublished slip op., ¶8 (Wis. Ct. App. Nov. 27, 2012).

¶24 Although the judges on the court of appeals were in agreement on the conclusion that the amended information was sufficiently clear, they were split on the other arguments before them. Id., ¶32. Two of the three judges departed from the lead opinion[4] and joined in a "concurring" opinion that ordered a new trial. Id., ¶37.

---

[4] The court of appeals refers to the opinion written by Judge Brennan as "the Lead Opinion." Badzinski, No. 2011AP2905-

8

¶25 The "concurrence" determined that the circuit court's response to the questions from the deliberating jury permitted the jury to speculate beyond the evidence:

> [t]he only evidence that Badzinski assaulted his niece, more than a decade before the 2009 trial, was that the assault happened in a room where, if jurors believed Badzinski's witnesses, that was not possible . . . [I]f the jurors believed Badzinski's niece, the assault did not happen anywhere other than in the basement laundry room. The trial court, in effect, told the jury to ignore this, and let the jurors pick any room in the house.

Id., ¶35 (emphasis in original). It reasoned that a guilty verdict cannot rest on matters beyond the evidence. Id., ¶36. Accordingly, the court reversed the circuit court and concluded it was error to tell the jury that it did not have to agree on the room where the incident occurred. Id., ¶34.

## II

¶26 This case presents two questions for our review. First, we must determine whether the circuit court's response of "no" to the jury's question deprived Badzinski of a unanimous verdict. Whether jury unanimity requires jurors to agree on a particular fact is a question of law. State v. Giwosky, 109 Wis. 2d 446, 452, 326 N.W.2d 232 (1982). We review questions of law independently of the determinations rendered by the circuit court and the court of appeals. State v. West, 2011 WI 83, ¶21, 336 Wis. 2d 578, 800 N.W.2d 929.

---

CR at ¶33. The "concurring" opinion written by Judge Fine and joined by Judge Curley is the opinion of the majority.

¶27 Second, we must determine whether the response violated Badzinski's due process rights by misleading the jurors into believing that the victim's credibility was irrelevant and that they could speculate beyond the evidence. Whether a jury instruction given by the circuit court violates a defendant's due process rights is a question of law, which this court reviews independently of the determinations rendered by the circuit court and the court of appeals. State v. Kuntz, 160 Wis. 2d 722, 735, 467 N.W.2d 531 (1991); State v. Zelenka, 130 Wis. 2d 34, 43, 387 N.W.2d 55 (1986).

## III

¶28 We begin our analysis by turning first to the issue of unanimity. "In criminal cases, the right to a jury trial implies the right to a unanimous verdict on the ultimate issue of guilt or innocence." State v. Tulley, 2001 WI App 236, ¶14, 248 Wis. 2d 505, 635 N.W.2d 807. However, "[u]nanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, [it] is not required with respect to the alternative means or ways in which the crime can be committed." State v. Holland, 91 Wis. 2d 134, 143, 280 N.W.2d 288 (1979); State v. Derango, 2000 WI 89, ¶14, 236 Wis. 2d 721, 613 N.W.2d 833 (quoting Holland, 91 Wis. 2d at 143); Giwosky, 109 Wis. 2d at 453-54 (quoting Holland, 91 Wis. 2d at 143).[5]

---

[5] Our cases have suggested that where a statute creates one crime with alternative modes of commission, unanimity may be required if the alternative modes are conceptually distinct. State v. Derango, 2000 WI 89, ¶22, 236 Wis. 2d 721, 613 N.W.2d

¶29 The United States Supreme Court illustrated this rule using a hypothetical where the element to be proven was threat of force, and the jurors disagreed on whether the defendant used a knife or a gun to make that threat. Richardson v. United States, 526 U.S. 813, 817 (1999) (citing McKoy v. North Carolina, 494 U.S. 433, 449 (1990)). The Court explained "that disagreement -- a disagreement about means -- would not matter as long as all 12 jurors unanimously concluded that the Government had proved the necessary related element, namely that the defendant had threatened force." Id. As such, it is ultimately the elements of the crime charged that must be accepted by a unanimous jury and not the peripheral details.

¶30 The crime charged in this case was sexual assault of a child. Pursuant to Wis. Stat. § 948.02(1)(e)[6], "[w]hoever has sexual contact with a person who has not attained the age of 13

---

833; State v. Lomagro, 113 Wis. 2d 582, 592, 355 N.W.2d 583 (1983). For example, in Manson v. State, 101 Wis. 2d 412, 304 N.W.2d 729 (1981), this court looked at whether Wis. Stat. § 943.32, which made robbery by force or by threat of force a crime, created a unanimity problem. It determined that unanimity was not an issue because force and the threat of force were conceptually similar. Id. at 429-30. More recently, the court has reframed the analysis to look at whether a statute's definition of a crime including multiple modes of commission represents fundamentally unfair or irrational policy choices. State v. Norman, 2003 WI 72, ¶¶62-63, 262 Wis. 2d 506, 664 N.W.2d 97.

This is not the type of issue we address in this case. Here only one mode of commission of the crime is alleged: that Badzinski placed A.R.B.'s hand on his penis.

[6] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

11

years is guilty of a Class B felony." Thus, the elements of the offense are: (1) that the defendant had sexual contact with A.R.B. and (2) that A.R.B. was under the age of 13 years at the time of the alleged sexual contact. Wis JI——Criminal 2102E (2008). It is these elements that the jury must have agreed upon unanimously.

¶31 Badzinski argues that the jury could not unanimously agree that the sexual contact occurred unless there was also agreement that it occurred in the laundry room. He asserts that because the only evidence of the crime was A.R.B.'s testimony, and that A.R.B. testified that the assault occurred in the laundry room, it is a fact necessary to prove an essential element of the crime.

¶32 We disagree. The location of the room is not a fact necessary to prove either of the essential elements in this case. A.R.B. testified that Badzinski's actions occurred in the laundry room. The contrary evidence regarding the location of the assault was relevant to A.R.B.'s credibility. See Kohlhoff v. State, 85 Wis. 2d 148, 154, 270 N.W.2d 63 (1978). However, a jury does not need to accept a witness's testimony in its entirety. State v. Balistreri, 106 Wis. 2d 741, 762, 317 N.W.2d 493 (1982); State v. Kimbrough, 2001 WI App 138, ¶29, 246 Wis. 2d 648, 630 N.W.2d 752. The jury could have believed A.R.B.'s testimony about the sexual contact itself without believing that it occurred in the laundry room. Indeed, Dr. Ghilardi testified that child victims do not always remember the peripheral details of the assault.

12

¶33 Furthermore, contrary to Badzinski's assertion, there was evidence in the record from which the jury could have concluded that the assault occurred elsewhere in the house. A.R.B. indicated that the assault occurred when she was playing hide-and-seek. Badzinski's sister testified that the children would play games such as hide-and-seek upstairs. His brother-in-law testified that it would be possible for someone to masturbate in one of the upstairs bedrooms without anyone noticing. The jury could have reasonably inferred from this evidence that the assault occurred somewhere other than in the laundry room.

¶34 Regardless of whether the assault occurred in the laundry room or some other room, the exact location was not a fact necessary to prove that the sexual contact occurred. Accordingly, we conclude that the circuit court's response of "no" did not deprive Badzinski of a unanimous jury.

IV

¶35 We turn next to whether the circuit court's statement to the jury that it did not have to agree that the assault happened in the laundry room violated Badzinski's due process rights. We start with the premise that if there is a reasonable likelihood that the jury applied an instruction in a manner that violates the constitution, a defendant is entitled to a new trial. State v. Burris, 2011 WI 32, ¶45, 333 Wis. 2d 87, 797 N.W.2d 430. "A jury is unconstitutionally misled if there is a reasonable likelihood that the instruction was applied in a manner that denied the defendant 'a meaningful opportunity for

13

consideration by the jury of his defense. . . . to the detriment of a defendant's due process rights.'" Id., ¶50 (quoting State v. Lohmeier, 205 Wis. 2d 183, 192, 556 N.W.2d 90 (1996)). Such is the case if the jury believes an instruction precludes the consideration of constitutionally relevant evidence. Id., ¶50 (citing Boyde v. California, 494 U.S. 370, 380 (1990)).

¶36 Badzinski claims that is what occurred here. He asserts that by telling the jury it did not have to agree on the location of the assault, the court impermissibly misled the jury to believe that it did not have to consider the victim's credibility. According to Badzinski, the court's instruction allowed the jury to disregard A.R.B.'s testimony that the assault occurred in the laundry room. Therefore, he concludes, the jury was allowed to speculate beyond the evidence,[7] denying him a meaningful opportunity to have the jury consider his defense that the assault did not happen because it could not have happened in the laundry room.

¶37 To prevail on an argument that the jury was unconstitutionally misled in violation of a defendant's due process rights, a defendant must show: (1) "that the instruction was ambiguous" and (2) "that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond

---

[7] Although Badzinski's brief focused on the speculation aspect of his argument, at oral argument he spent a substantial amount of time discussing credibility. To the extent that both arguments relate to whether the court's instruction deprived him of due process, we address them together here.

14

a reasonable doubt." Burris, 333 Wis. 2d 87, ¶48 (quoting Waddington v. Sarausad, 555 U.S. 179, 190 (2009)).

¶38 In evaluating these factors, we consider the instruction "in light of the proceedings as a whole, instead of viewing a single instruction in artificial isolation." Lohmeier, 205 Wis. 2d at 193. For example, in Burris, the court determined that it was not reasonably likely that a potentially confusing instruction led the jury to apply it in an unconstitutional manner. 333 Wis. 2d 87, ¶23. Burris argued that the judge's instruction regarding "utter disregard" misled the jury into minimizing the weight of the defendant's post-shooting behavior. Id., ¶43. The court concluded that Burris did not prove the instruction led to a misapplication in light of the "extensive evidence of Burris's after-the-fact conduct presented at trial, counsel's focus on this evidence in closing statements, and language in both the pattern and supplemental jury instructions indicating that it could consider this conduct in its determination." Id., ¶63. Thus, there was no due process violation.

¶39 Similarly, in Lohmeier, the court found that a potentially confusing instruction on contributory negligence did not lead the jury to believe that it could not consider evidence of an affirmative defense. Lohmeier, 205 Wis. 2d at 187. In that case, most of the evidence presented at trial related to the affirmative defense, as did the defendant's opening and closing arguments. Id. at 197. The State also addressed the affirmative defense in its rebuttal and closing statement.

15

Additionally, the court instructed the jury to consider all of the instructions as a whole, twice instructing the jury on the affirmative defense. Id. On this record, the court concluded that a single instruction did not negate the emphasis on the evidence throughout the proceedings. Id. Therefore the instruction did not violate the defendant's due process rights. Id. at 200.

¶40 Following the examples in Burris and Lohmeier, our analysis here considers the evidence presented at trial, the parties' closing statements, the initial jury instructions, the jury's question, and the court's response. Burris, 333 Wis. 2d 87, ¶51. Looking at the challenged language in light of the rest of the proceedings, we conclude that Badzinski has not shown that the instruction was ambiguous, or that it was reasonably likely to cause the jury to ignore the victim's credibility and rely on speculation in violation of his due process rights.

¶41 The State's main evidence in this case was A.R.B.'s testimony. She testified that during a family gathering at her grandparents' house Badzinski took her hand and placed it on his penis. According to A.R.B. this occurred in the laundry room, which she probably entered while playing hide-and-seek. The State's expert witness further testified that a child victim would remember the assault, but not necessarily the peripheral details.

¶42 Badzinski's defense focused on his assertion that an assault could not have occurred in the laundry room. Multiple

16

family members testified on his behalf that the gatherings mainly took place near the laundry room, that the door was kept open, and that the family members would regularly go into the laundry room to get ice and frosted beer mugs.

¶43 The State's closing argument focused on A.R.B.'s testimony and why the jury should find her credible. It stressed that the core event was Badzinski placing A.R.B.'s hand on his penis, and that was not something she was likely to forget. Badzinski's closing argument also focused on A.R.B.'s credibility. He sought to undermine it with the fact that according to his witnesses, the assault could not have occurred in the laundry room.

¶44 In giving the jury instructions, the court stressed that the jurors could consider only the evidence presented at trial. It gave the elements of sexual assault and stated that it was the State's burden to prove each element beyond a reasonable doubt. The jury instructions also spoke at length about credibility and stressed that it was an issue for the jurors. The court later reiterated that the jury was not to rely on evidence outside of the record.

¶45 During deliberations, the jury asked if it must agree where the assault occurred. The court responded that it must agree that the assault took place at the location of the gathering. The jury subsequently asked if it must agree that the assault occurred in the laundry room. The court responded "no."

17

¶46 In this context, the circuit court's instructions were not ambiguous. It told the jury what elements the State needed to prove, that it could rely only on the evidence, that credibility was for the jury to decide, and that it did not have to agree on the room where the assault occurred. The court's instructions were accurate. As long as the jury followed the instructions literally, it would be prevented from speculating beyond the evidence and would not be required to ignore evidence that may discredit A.R.B.

¶47 Even if the instructions were potentially ambiguous, considering the proceeding as a whole, it is not reasonably likely that the jury believed it could not consider the victim's credibility and could reach conclusions based on speculation. The focus of the trial was on credibility and the room in which the assault occurred. Further, the jury instructions informed the jurors that credibility was an issue for them to decide, and required them to base their decisions on evidence and not rely on evidence outside the record. Under the instructions, the jury was free to consider and weigh all of the evidence presented at trial, including A.R.B's credibility. It is unlikely that a single word answer from the court during deliberations would negate everything that preceded it.

¶48 Contrary to Badzinski's assertions, the jury's guilty verdict does not show that it speculated beyond the evidence. Juries are allowed to draw reasonable inferences based on the evidence. See State v. Poellinger, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990) ("It is the function of the trier of

18

fact . . . to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."); Johnson v. State, 55 Wis. 2d 144, 147, 197 N.W.2d 760 (1972) ("Reasonable inferences drawn from the evidence can support a finding of fact.").

¶49 Here, there was evidence from which the jurors could have inferred that the assault occurred somewhere else in the house and found Badzinski guilty. A.R.B. testified that the assault occurred at one of the family gatherings in her grandparents' house. She indicated that it may have occurred while she was playing hide-and-seek. There was evidence that the children played hide-and-seek upstairs at the gathering and that an individual could have masturbated in one of the upstairs bedrooms. From this evidence, the jury could infer that the assault occurred upstairs.

¶50 Because we conclude that the circuit court's response of "no" to the jury was not ambiguous and was not reasonably likely to cause the jury to misapply the instruction in an unconstitutional manner, Badzinski has not met his burden. In light of the facts of this case, we reverse the court of appeals' determination that the instruction unconstitutionally misled the jury.

V

¶51 In sum, we conclude that the circuit court's response of "no" did not deprive Badzinski of a unanimous verdict. Jury unanimity is required only on the essential elements of the crime. Here, the location of the crime was not one of those

19

elements. Thus, it was not something that the jurors needed to agree upon unanimously.

¶52 We further conclude that Badzinski failed to show that the court's response of "no" was ambiguous or reasonably likely to cause the jury to apply the jury instructions in a manner which violates due process. Given the evidence presented, the parties' closing arguments, and the court's other instructions, the response was unlikely to mislead the jury into believing that the victim's credibility was irrelevant and that it could speculate beyond the evidence.

*By the Court*.–The decision of the court of appeals is reversed.