PER CURIAM.
¶1 Joshua Malueg appeals a judgment, entered upon a jury's verdict, convicting him of one count of incest with a child by a stepparent. He also appeals an order denying his motion for postconviction relief.[1] Malueg contends that: (1) his trial counsel provided ineffective assistance by not attempting to introduce evidence regarding an allegedly false prior sexual assault allegation made by the victim; and (2) he is entitled to a new trial in the interest of justice. We reject his arguments and affirm.
BACKGROUND
¶2 In September 2014, during a videotaped forensic interview, ten-year-old Annie[2] alleged that Malueg, her stepfather, had sexual contact with her on two occasions. The first assault Annie described took place at her uncle Jon Jacque's cabin. Annie stated that, on this occasion, Malueg came into her bedroom and "stuck his ... private part into my butt, then start[ed] to go back and forth. Then at the end, he pee[d]." She said that during this assault, Jacque came into the bedroom, "looked at us weirdly[,]" and then left the room.
¶3 The second assault Annie described took place at the trailer home in which she and Malueg lived. Annie stated that, on this occasion, Malueg "did the same thing to me ... [l]ike at [Jacque's cabin]." Specifically, she told the interviewer that Malueg "put his private part in my butt then started back and forth, back and forth, back and forth. Then when we were done he peed[.]"
¶4 The State charged Malueg with first-degree sexual assault of a child under the age of twelve and incest with a child by a stepparent. Both charges stemmed from the assault Annie described as taking place at her trailer home; there were no charges based on the alleged assault at Jacque's cabin.
¶5 After the charges against Malueg were filed, Jacque was interviewed by the Everest Metro Police Department about the alleged assault Annie described as taking place at Jacque's cabin. In this interview, Jacque stated he never witnessed any sexual activity between Malueg and Annie. Malueg's defense counsel, Jay Kronenwetter, received a copy of a police report detailing Jacque's failure to corroborate Annie's story about the assault at his cabin in pretrial discovery.
¶6 The State filed a motion in limine to exclude from trial any evidence regarding Annie's sexual history or prior allegations of sexual assault, pursuant to Wisconsin's rape shield statute.[3] At a hearing on this motion, Kronenwetter did not object to the State's motion and informed the circuit court "the defense has no intention of calling [Jacque]." Consequently, the court granted the State's motion.
¶7 At trial, Annie testified about the assault that occurred at the trailer home. She did not provide any testimony regarding the alleged assault at Jacque's cabin. The State also played an edited version of Annie's videotaped forensic interview for the jury. The edited videotape had all references to the alleged assault at Jacque's cabin removed, consistent with the circuit court's ruling on the State's motion in limine.[4]
¶8 The jury found Malueg guilty of the incest charge, but not guilty of the sexual assault charge. The circuit court subsequently imposed a sentence consisting of eight years' initial confinement and eight years' extended supervision.
¶9 Malueg then filed a motion for postconviction relief, arguing: (1) Kronenwetter provided ineffective assistance of counsel by failing to oppose the State's motion in limine and, consequently, failing to attempt to introduce Jacque's testimony that he never witnessed Malueg sexually assaulting Annie at Jacque's cabin; and (2) a new trial was necessary in the interest of justice.
¶10 The circuit court held a Machner hearing on Malueg's motion.[5] At the hearing, Kronenwetter testified he was aware "very, very early" in the case about Annie's allegation that Jacque witnessed Malueg sexually assaulting her in Jacque's cabin, and that Jacque did not corroborate this allegation. Kronenwetter stated that, based on this evidence, he considered two trial strategies: (1) a "narrow" approach, that would focus exclusively on the charged incident of sexual assault-i.e., the assault at the trailer home; and (2) a "broader" approach, that would introduce evidence regarding Annie's second, uncharged allegation at Jacque's cabin-including Jacque's failure to corroborate this allegation.
¶11 Kronenwetter testified that he "struggled" with which strategy to pursue. Ultimately, he chose the narrow approach because he felt the State's case was "weak," as there was no "physical evidence or harm" that supported Annie's allegation that Malueg assaulted her in the trailer home. Further, Kronenwetter felt that bringing in any evidence regarding the alleged assault at Jacque's cabin could be prejudicial to the defense. Kronenwetter reasoned that it "would be too much for a jury to focus solely on the allegations of the case in front of them" if another, uncharged allegation was brought into evidence. Kronenwetter also acknowledged he believed evidence of the sexual assault at Jacque's cabin, including Jacque's failure to corroborate Annie's allegation, may have been inadmissible under the rape shield statute.
¶12 The circuit court ultimately denied Malueg's postconviction motion in a written decision. The court concluded that Kronenwetter did not provide ineffective assistance because his decision to focus solely on the charged allegation was reasonable. Malueg now appeals.
DISCUSSION
I. Ineffective assistance of counsel
¶13 On appeal, Malueg first argues that Kronenwetter provided ineffective assistance by failing to attempt to introduce evidence regarding Annie's allegation that Malueg sexually assaulted her at Jacque's cabin-specifically, Jacque's failure to corroborate this allegation. Whether an attorney rendered ineffective assistance is a mixed question of fact and law. State v. Breitzman , 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. We will uphold the circuit court's findings of fact unless they are clearly erroneous. Id. Findings of fact include the circumstances of the case and trial counsel's conduct and strategy. Id. However, whether counsel's conduct constitutes ineffective assistance is a question of law that we review independently. Id.
¶14 To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his or her counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). If a defendant fails to make a sufficient showing on one prong of the Strickland test, we need not address the other. Id. at 697. In this case, we need not address the prejudice prong because we conclude Malueg has failed to show Kronenwetter performed deficiently.
¶15 To demonstrate deficient performance, a defendant must show that his or her trial counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. State v. Carter , 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. Accordingly, we are highly deferential to counsel's strategic trial decisions. Breitzman , 378 Wis. 2d 431, ¶65. "In fact, where a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.' " Id. (citation omitted). We will not second-guess a reasonable trial strategy, unless that strategy was based on an irrational trial tactic or based upon caprice rather than upon judgment. Id.
¶16 At the Machner hearing, Kronenwetter clearly articulated the two trial strategies he considered: (1) a narrow approach that focused solely on the charged allegation that Malueg sexually assaulted Annie at the trailer home; and (2) a broader approach that included Annie's allegation that Malueg sexually assaulted Annie at Jacque's cabin, and the fact that Jacque failed to corroborate this allegation. For the following reasons, we agree with the circuit court that Kronenwetter's ultimate decision to pursue the "narrow" trial strategy was reasonable.[6]
¶17 First, Annie's accounts of both assaults were very similar. In both the charged and uncharged allegation, Annie stated that Malueg committed that assault by penetrating her "butt," going "back and forth," and "pee[ing]" when he was done. Based on this consistency, a jury could have interpreted testimony regarding a second alleged assault to show that Malueg had a propensity to sexually assault Annie. As Kronenwetter articulated at the Machner hearing, there is a reasonable concern that the combined "weight" of the similar allegations may have been "too much for a jury to focus solely on the allegations of the case in front of them." This concern is reasonable given that our supreme court has recognized that "[w]hen a jury is informed of the accused's previous wrongful conduct, it is likely that it will consider that the defendant is a 'bad person' prone to criminal conduct." State v. Bettinger , 100 Wis. 2d 691, 696, 303 N.W.2d 585 (1981) (citation omitted).
¶18 Second, relying on Jacque's failure to corroborate Annie's allegation that Malueg assaulted her at Jacque's cabin to impeach Annie's credibility would have been, as the circuit court concluded, "a double edged sword." On the one hand, the jury may have believed Jacque's denial, and therefore questioned Annie's overall credibility. On the other hand, the jury could have believed that Jacque was lying about not witnessing the uncharged assault.[7] Alternatively, the jury could have believed Jacque but, regardless, still have concluded an assault at Jacque's cabin did in fact occur and Annie, as a child victim, simply failed to accurately recall its exact details. See State v. Badzinski , 2014 WI 6, ¶32, 352 Wis. 2d 329, 843 N.W.2d 29 ("[A] jury does not need to accept a witness's testimony in its entirety."). Accordingly, Kronenwetter's decision to avoid the possibility the jury may have believed Annie's allegation that Malueg also assaulted her at Jacque's cabin was reasonable.
¶19 Finally, introducing a second allegation by Annie against Malueg could have distracted the jury from focusing on the chosen defense strategy. Our supreme court has stated "an average juror likely presumes that a defendant is incapable of [sexually assaulting a child]." State v. Hurley , 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174. Given that reality, Kronenwetter chose to focus on the single charged allegation, which he viewed as "weak," because he was "concerned that a jury, rather than focusing on the ... allegations before them, would muddle events together[.]" This reasoning was neither irrational nor the result of caprice, as opposed to one of judgment. If Kronenwetter had attempted to impeach Annie's credibility by introducing a second allegation, the jury could have become distracted or confused. Moreover, as discussed above, the jury may have believed that Malueg did, in fact, sexually assault Annie on more than one occasion.
¶20 Malueg raises a number of arguments in an attempt to show that Kronenwetter's representation fell below an objective standard of reasonableness. None persuade us. He first contends that Kronenwetter erred by thinking the State's case was weak due to a lack of physical evidence. In support, he argues that "[t]here is no statutory or case law that requires physical evidence for a conviction." This argument fails because it mischaracterizes Kronenwetter's rationale for viewing the State's case as "weak." Namely, Kronenwetter did not indicate at any time that he believed any statute or case law required physical evidence for a conviction. Rather, he merely said that because there was no physical evidence, the case against Malueg was not as strong as it otherwise would have been.
¶21 Malueg next contends that Kronenwetter's concern about the prejudicial effect of introducing evidence regarding the uncharged allegation did "not make sense" because if he "could have shown that the [assault at Jacque's cabin] never happened, it is less likely that [the] jury would have believed [Annie's] allegation in this case." This argument ignores our standard of review by asking us to second-guess a trial strategy on the basis that an alternate strategy "could have" been beneficial. We decline to do so, as we "must avoid the distorting effects of hindsight." State v. Thiel , 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).
¶22 Malueg also argues that Kronenwetter was deficient because he "did not reconsider" his trial strategy after the circuit court excluded from evidence a "preposterous allegation[ ]" made by Annie's four-year-old sister.[8] However, Malueg fails to address Kronenwetter's testimony at the Machner hearing that directly contradicts this argument. Namely, Kronenwetter testified that, "[d]espite the judge's change on that one piece of evidence, the mouse incident allegation, we came to the conclusion we would proceed on the track we were on, with the narrower approach to evidence[.]" Consequently, we reject Malueg's argument.
¶23 Malueg's final argument is that Kronenwetter's assertion that he made a "well thought out strategic choice ... does not ring true." Once again, Malueg ignores our standard of review. The circuit court found, as a matter of historical fact, that Kronenwetter "made a calculated decision" to focus solely on the charged allegation. Malueg does not cite any legal authority or develop a reasoned argument as to why that finding could be held clearly erroneous. Therefore, we will not consider this argument further. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).
¶24 In sum, we determine that Kronenwetter's decision to pursue a trial strategy that avoided introducing evidence of Annie's second, uncharged allegation that Malueg sexually assaulted her at Jacque's cabin fell within the wide range of reasonable professional assistance. Accordingly, we conclude Kronenwetter did not perform deficiently.
II. New trial in the interest of justice
¶25 Malueg also argues that, even if Kronenwetter did not perform deficiently, we should grant him a new trial because the real controversy was not fully tried. WISCONSIN STAT. § 752.35 grants this court the discretionary power to reverse a conviction in the interest of justice where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." See State v. Langlois , 2018 WI 73, ¶54, 382 Wis. 2d 414, 913 N.W.2d 812. "Our discretionary reversal power is formidable, and should be exercised sparingly and with great caution." State v. Williams , 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. Accordingly, we will grant a new trial in the interest of justice "only in exceptional cases." State v. Cuyler , 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983).
¶26 Malueg's argument that the case was not fully tried rests on his assertion that Jacque's testimony would have "severely compromised the credibility of [Annie's] accusations." But we have already determined that Kronenwetter properly chose not to introduce this evidence because of its potential prejudicial effects. Moreover, Jacque's testimony about the alleged cabin assault does not bear directly on the charge for which Malueg was tried-the sexual assault of Annie in the trailer home. Thus, we conclude the real controversy was fully tried, and this is not one of the "exceptional cases" that warrants the exercise of our discretionary reversal power.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable Gregory Grau presided over Malueg's trial and entered the judgment of conviction. The Honorable Gregory Strasser entered the order denying Malueg's postconviction motion.

Pursuant to the policy underlying Wis. Stat. Rule 809.86 (2015-16), we refer to the victim using a pseudonym. All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Wis. Stat. § 972.11.

The circuit court instructed the jury that it "should not draw any inference from the edits."

See State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

The State also raises an argument that evidence of the uncharged sexual assault at Jacque's cabin would have been inadmissible. However, we need not address this issue because we conclude that, even assuming the evidence would have been admissible, Kronenwetter's decision not to attempt to introduce the evidence was reasonable. See Turner v. Taylor , 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

As the State notes, Jacque's credibility would certainly have been at issue had he been called to testify. For instance, when asked at the Machner hearing how many times he had been convicted of a crime, Jacque answered, "A lot. I have no idea, to be honest." See Wis. Stat. § 906.09(1) (evidence of prior convictions is generally admissible for the purpose of attacking a witness's credibility).

The substance of this allegation was that Malueg had placed either a toy or real mouse in the four-year-old's anus. The circuit court originally ruled this evidence was admissible as other acts evidence, but reversed its decision four days later. Annie's four-year-old sister did not testify at trial, and Malueg does not argue this allegation has any additional relevance to this appeal.